Hillsborough-southern judicial district
Nos. 2004-576
    2004-716

### CHARLES L. GREENHALGH, ESQ., TRUSTEE UNDER THE ROBERT W. HALLMAN IRREVOCABLE LIFE INSURANCE TRUST

v.

### PRESSTEK, INC.

Argued: September 14, 2005
Opinion Issued: October 31, 2005

*Hamblett & Kerrigan*, of Nashua (*J. Daniel Marr* on the brief), *Cooley Godward LLP*, of San Diego, California (*Amy Hallman Rice* on the brief), and *The Law Office of Wayne J. Rice*, of Poway, California (*Wayne J. Rice* on the brief and orally), for the plaintiff.

*Orr & Reno, P.A.*, of Concord (*Emily Gray Rice* and *Martha Van Oot* on the brief, and *Ms. Rice* orally), for the defendant.

DALIANIS, J. The plaintiff, Charles L. Greenhalgh, Esq., Trustee Under The Robert W. Hallman Irrevocable Life Insurance Trust, appeals an order of the Superior Court (*Hicks*, J.) rejecting his claim for breach of contract and denying his request for declaratory judgment regarding the parties' rights and obligations under a "Split Dollar Agreement." The

defendant, Presstek, Inc., cross-appeals the trial court's denial of its request to recover premium payments it made pursuant to the Split Dollar Agreement. We affirm.

The trial court found the following facts. Robert W. Hallman began work as Presstek's chief executive officer (CEO) and as a member of Presstek's board of directors (Board) on or about September 21, 1998. The terms of his employment were initially set forth in a July 29, 1998 letter and a September 17, 1998 employment agreement. The term of employment under the employment agreement ended on September 30, 1999, but was automatically renewed for successive one-year periods unless either party gave written notice by the preceding June 30. If Presstek terminated Hallman for cause, the employment agreement provided that Hallman had no right to receive compensation or other benefits for any period after termination, except as required by law.

On December 8, 1998, the Board authorized Neil Rossen, chief financial officer, to acquire split dollar whole life insurance policies for Hallman. On July 9, 1999, Hallman, as grantor, and the plaintiff, as trustee, entered into the Robert W. Hallman Irrevocable Life Insurance Trust (Trust) as a means of holding a life insurance policy from Sun Life Assurance Company of Canada (policy). Under the Trust terms, the only beneficiaries of the Trust were Hallman's wife, children and grandchildren. That same day, the plaintiff, as trustee of the Trust, entered into a Split Dollar Agreement with Presstek. The plaintiff also executed a collateral assignment assigning to Presstek the plaintiff's "right, title and interest in" the policy. Under the Split Dollar Agreement, Presstek paid the annual premium on the policy each April in the amount of $35,645.00. The Split Dollar Agreement provided that when Hallman died, Presstek was entitled to reimbursement for all premium payments made, and the Trust beneficiaries were to receive the remainder of the death benefit under the policy. Article IV, section 4.1 of the Split Dollar Agreement provided for its termination upon the occurrence of any one or more of the following events: (a) cessation of operation by Presstek; (b) bankruptcy, receivership or dissolution of Presstek; or (c) "Robert W. Hallman terminates his employment with Presstek, Inc. for any other reason but retirement."

On April 3, 2002, the Board voted to remove Hallman as Presstek's president and CEO, but did not otherwise address his employment. However, prior to the meeting, the Board presented Hallman with a draft Separation Agreement and Release for his review and acceptance. Presstek nonetheless made the April 2002 premium payment. On April 12, 2002, counsel for Hallman sent a letter to the Board responding to the draft Separation Agreement and Release and proposing various changes. In the letter, Hallman's counsel requested that Presstek add a clause to

the Separation Agreement and Release to reflect that Presstek would continue to pay the premiums on the Policy. Presstek rejected this suggestion and the parties did not add any such clause. Both Hallman and Presstek signed the Separation Agreement and Release, and it became effective on April 30, 2002.

In section 3 of the Separation Agreement and Release, Hallman acknowledged that he was receiving monies and other benefits that he would not have received but for his execution of the agreement and the fulfillment of the promises he made therein including, among other things, immediate vesting and an extended deadline for exercise of certain stock options. Hallman also agreed that "the foregoing payments and benefits shall be in lieu of any other payments, including severance, which might otherwise by [sic] payable to Hallman, or to which Hallman might otherwise be entitled, under the Employment Agreement or otherwise." In section 10 of the Separation Agreement and Release, Hallman granted a general release to Presstek on his own behalf, and on behalf of "his heirs, executors, administrators, successors and assigns" for all claims, including "any and all matters arising out of Hallman's employment by Presstek and the cessation of said employment."

Presstek noted on a personnel change form, dated May 3, 2002, that Hallman's termination was "voluntary," and that the reason was "resignation." The proxy statement from Presstek's June 17, 2002 shareholder meeting also stated that Hallman "resigned from all positions of the Company on April 30, 2002." Presstek did not make the premium payments for 2003 or 2004. However, the policy is still in place pursuant to an automatic loan premium provision in the policy.

On May 9, 2003, the plaintiff brought a petition for a declaratory judgment that Presstek had a present and future contractual obligation to pay the annual premium payments in accordance with the Split Dollar Agreement. The plaintiff also asserted claims for breach of contract, and breach of implied duty of good faith and fair dealing. Presstek filed a counterclaim for breach of contract. By order dated July 27, 2004, the trial court concluded that Presstek had not breached the Split Dollar Agreement, and had no present or future contractual obligation to make annual premium payments on the policy. The trial court also concluded that Presstek had waived its counterclaim as it had failed to present evidence in support of it.

Presstek filed a post-trial motion to recover premium payments it made pursuant to the Split Dollar Agreement. On August 23, 2004, the trial court denied this motion and on September 22, 2004, the trial court denied Presstek's motion for reconsideration. On appeal, the plaintiff argues that the trial court erred by concluding that: (1) the Split Dollar Agreement

terminated by its terms; and (2) Hallman released the Trust's rights under the Split Dollar Agreement when he signed the Separation Agreement and Release. On cross-appeal, Presstek contends that the trial court erred by denying its request to recover the premium payments it made pursuant to the Split Dollar Agreement.

We first address the plaintiff's appeal. The plaintiff first argues that the trial court erroneously concluded that the Split Dollar Agreement terminated by its terms, thus ending Presstek's present and future obligation to pay the premiums. Because the proper interpretation of a written agreement is ultimately a question of law for this court, we review the Split Dollar Agreement *de novo*. *Appeal of State of N.H.*, 147 N.H. 426, 429 (2002). In the absence of ambiguity, the parties' intent will be determined from the plain meaning of the language used. *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569 (1995). The words and phrases used by the parties will be assigned their common meaning, and we will ascertain the intended purpose of the contract based upon the meaning that would be given to it by a reasonable person. *See ELCA of N.H., Inc. v. McIntyre*, 129 N.H. 114, 116 (1987). Only when the parties reasonably disagree as to its meaning will we deem the contract's language to be ambiguous. *See Appeal of State of N.H.*, 147 N.H. at 429. If the contract language is ambiguous, we must determine what the parties, under an objective standard, mutually understood the ambiguous language to mean. *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 140-41 (2001).

The parties disagree as to the correct interpretation of article IV, section 4.1 of the Split Dollar Agreement. Section 4.1 provided for the termination of the Split Dollar Agreement upon the occurrence of any one or more of the following events: (a) cessation of operation by Presstek; (b) bankruptcy, receivership or dissolution of Presstek; or (c) "Robert W. Hallman terminates his employment with Presstek, Inc. for any other reason but retirement." The plaintiff argues that the plain language of subsection 4.1(c) means that the Split Dollar Agreement terminates only when Hallman makes a unilateral decision to end his employment with Presstek "for any other reason but retirement." In other words, Hallman, as the subject of the clause, must perform the verb, "terminates." In contrast, Presstek argues that the plain language of subsection 4.1(c) means that the Split Dollar Agreement terminates when Hallman's employment with Presstek ends "for any other reason but retirement." Thus, the parties' disagreement relates to verb usage—whether "terminates" expresses an action or describes the condition of the subject.

"Terminate" can mean "*to bring* to an ending . . . in time" or "*to come* to an end in time," depending upon whether the verb is used in its transitive

or intransitive form. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2359 (unabridged ed. 2002) (emphasis added). Moreover, even if the facts showed that Presstek fired Hallman, one could argue that Hallman terminated his employment with Presstek "for any other reason but retirement" because Hallman ended his working relationship with Presstek even if he did so involuntarily. We thus conclude that subsection 4.1(c) is reasonably subject to varying interpretations and is, consequently, ambiguous. Therefore, we review the record to determine what the parties, under an objective standard, mutually understood the ambiguous phrase "Hallman terminates his employment" to mean. See N.A.P.P. Realty Trust, 147 N.H. at 140-41. In applying this objective standard, we consider the parties' intent by examining the contract as a whole, the circumstances surrounding its execution and the object intended by the agreement, keeping in mind our goal of giving effect to the intention of the parties. Id. at 141. We will defer to the trial court's findings of fact, if supported by the evidence. Id.

█ The plaintiff testified that he had no discussions with anyone at Presstek about the meaning of subsection 4.1(c) at the time of execution. Presstek provided no testimony from witnesses who had reviewed the Split Dollar Agreement prior to Presstek's signing as to Presstek's intent regarding subsection 4.1(c). Presstek procured the Split Dollar Agreement in 1999 when Hallman was president and CEO of the company. The parties agree that it was intended to be part of Hallman's compensation package for the benefit of his wife and an incentive to persuade him not to return to his former employer. If Presstek terminated Hallman for cause under his employment agreement, Hallman had no right to receive compensation or other benefits for any period after termination, except as required by law. Hallman was or should have been aware of this fact at the time the parties executed the Split Dollar Agreement. However, the plaintiff's construction of subsection 4.1(c) leads to the incompatible result that if Presstek had terminated Hallman for cause under his employment agreement, thus eliminating Hallman's right to post-termination benefits, Hallman could still require Presstek to pay the premium on the policy under the Split Dollar Agreement. Applying an objective standard to the record before us, we conclude that the parties should have reasonably expected and understood subsection 4.1(c) to mean that Presstek's obligations under the Split Dollar Agreement would expire if and when Hallman's employment with Presstek ended "for any other reason but retirement."

█ We next address whether "Hallman terminated his employment for any other reason but retirement" in the context of our holding above. It is undisputed that Hallman's employment with Presstek ended. The plaintiff

argues that Hallman accepted the Separation Agreement and Release and contemporaneously made the decision to retire. Contrary to Hallman's testimony at trial, the trial court found "no evidence indicating that Hallman retired rather than resigned nor that it was Hallman's intention to retire." We will sustain the trial court's findings unless they are lacking in evidential support. *Appeal of State of N.H.*, 147 N.H. at 429. We conclude that the record supports the trial court's finding that Hallman terminated his employment with Presstek "for any other reason but retirement." As such, the trial court did not err by concluding that the Split Dollar Agreement terminated by its own terms, and that Presstek had no present or future obligation to pay the annual premiums on the policy.

Next, the plaintiff argues that the trial court erred by concluding that Hallman released the rights and claims of the Trust beneficiaries under the Split Dollar Agreement when Hallman signed the Separation Agreement and Release. In section 10 of the Separation Agreement and Release, Hallman granted a general release to Presstek on behalf of "his heirs, executors, administrators, successors and assigns" for all claims, including "any and all matters arising out of Hallman's employment by Presstek and the cessation of said employment." On appeal, Hallman contends that he did not have the power to release the rights of Trust beneficiaries under the Split Dollar Agreement since the Trust is a separate legal entity and Hallman has no interest in its assets. Since we have concluded that the Split Dollar Agreement terminated by its terms and, consequently, the Trust beneficiaries have no present or future right to have Presstek pay policy premiums, we need not address the plaintiff's assertion.

Finally, Presstek appeals the denial of its post-trial motions to recover the premium payments it made pursuant to the Split Dollar Agreement. Presstek offers no language in the Split Dollar Agreement or collateral assignment to support its claim for immediate reimbursement of premium payments. Rather, Presstek contends that because the trial court found that it would be "inequitable to enforce the Split Dollar Agreement against Presstek," the trial court also should have found that it was inequitable for the Trust to retain the benefit of the cash value of the premiums paid by Presstek from 1999 through 2002.

The trial court denied Presstek's request as "without merit," noting that Presstek offered no factual or legal support for its request. In addition, the trial court stated that its finding that Presstek was no longer contractually obligated to make payments under the Split Dollar Agreement as of the date of Hallman's resignation did not entitle Presstek to recover its premium payments. In fact, the trial court stated that upon review of the

Split Dollar Agreement and relevant documents submitted in this case, the trial court was unable to find *any* support for Presstek's request. Presstek moved the trial court to reconsider, raising its equity argument for the first time. The trial court rejected Presstek's argument.

We will sustain the trial court's findings and conclusions unless they are lacking in evidential support or tainted by error of law. *Appeal of Stale of N.H.*, 147 N.H. at 429. After reviewing the record before the trial court, we conclude that Presstek failed to introduce sufficient evidence or even assert any legal argument to support its claim for immediate reimbursement of the premiums. Thus, we conclude that the trial court did not err in denying Presstek's initial request to recover the premium payments that were made pursuant to the Split Dollar Agreement.

We will also uphold a trial court's decision on a motion for reconsideration absent an unsustainable exercise of discretion. *See Mt. Valley Mall Assocs. v. Municipality of Conway*, 144 N.H. 642, 654 (2000). We conclude that the trial court acted within its discretion by denying Presstek's motion for reconsideration because Presstek, again, failed to introduce sufficient evidence of its entitlement to immediate reimbursement of the premium payments.

*Affirmed.*

NADEAU and DUGGAN, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.