# United States Court of Appeals
## For the First Circuit

No. 10-2379

JANE C. AVERY,

Plaintiff, Appellee,

v.

ROBERT W. HUGHES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Boudin, Selya and Howard,
Circuit Judges.

William C. Saturley, with whom Preti, Flaherty, Beliveau &
Pachios, LLP was on brief, for appellant.
Martin P. Honigberg, with whom Sulloway & Hollis, P.L.L.C. was
on brief, for appellee.

November 18, 2011

**SELYA**, **Circuit Judge**. When defendant-appellant Robert W. Hughes failed to close on a real estate purchase and sale agreement (the Agreement), the seller retained his deposit, sold the property to a third party for a lower price, and assigned its claim for the price differential to plaintiff-appellee Jane C. Avery. Avery sued. The defendant resisted, arguing that the circumstances evinced the parties' intent that the deposit would serve as liquidated damages. The district court rejected the defendant's position and construed the Agreement as allowing the recovery of actual damages. Avery v. Hughes, No. 09-cv-265, 2010 WL 3211069 (D.N.H. Aug. 11, 2010). The defendant appeals. We affirm.

The court below made its critical contract-interpretation ruling on summary judgment. Consequently, we derive the facts from the summary judgment record and rehearse them in the light most flattering to the party against whom summary judgment was granted. Foote v. Town of Bedford, 642 F.3d 80, 81 (1st Cir. 2011).

The plaintiff is a citizen and resident of Maine. In April of 2006, her mother died and, by will, named the plaintiff as a co-executor of her estate (hereinafter variously the Estate or the seller). She also bequeathed to the plaintiff her house at 75 South Main Street, Wolfeboro, New Hampshire. The house fronts on picturesque Lake Winnipesaukee.

The plaintiff took title to the property, subject to the rights of the Estate. The Estate had few assets and retained the

residual right to sell the house to the extent necessary to satisfy creditors' claims.  See N.H. Rev. Stat. Ann. §§ 554:17, 559:1.  The plaintiff, as sole devisee, would in that event receive any leftover sale proceeds.  Id. §§ 559:6, 559:19.

When an appraisal valued the property at $1,750,000, the co-executors retained Prudential Spencer-Hughes (Prudential), a real estate brokerage firm, to market it.  The defendant, a citizen and resident of New Hampshire, owns and operates Prudential.

As time went on, the defendant expressed an interest in acquiring the lakefront home.  In March of 2007, the Estate and the defendant entered into the Agreement, with Prudential acting as a dual (disclosed) agent.  The purchase price was $1,600,000.

Certain provisions of the Agreement are of paramount importance to the issues on appeal.  Paragraph 3 required the purchaser to make a $25,000 deposit, by a personal check, "to be held in an escrow account."  Paragraph 14, entitled "Liquidated Damages," stated in pertinent part:

> If BUYER shall default in the performance of their obligation under this Agreement, the amount of the deposit may, at the option of SELLER, become the property of SELLER as reasonable liquidated damages.

Paragraph 17, entitled "Additional Provisions," included language specially inserted into the printed form, which reads:

> Should the seller accept the terms and conditions of the sale including the owner financing contingency, the buyer's deposit becomes non-refundable and will be released to the seller prior to the buyer moving into the

home, or March 15th 2007, whichever comes first.

The Agreement impressed some unusual conditions on the transaction. For one thing, the seller covenanted in a separate agreement (the Lease) to lease the premises to the defendant at a rate of $3,000 per month. Although the Agreement and the Lease were set out in separate documents, they were interconnected; the parties intended that the defendant would lease the property until the closing of the purchase and sale transaction. To this end, the parties made the Agreement contingent on the Lease.

For another thing, the Agreement required the seller to provide purchase money financing. Specifically, the seller agreed to take back a first mortgage for $1,250,000. The remainder of the purchase price — $325,000 — would be paid at the closing, which was scheduled to take place on or before November 30, 2007.

After the parties executed the Agreement and the Lease, the defendant tendered the deposit by a personal check dated April 12, 2007, in the amount of $25,000. This check was delivered directly to the seller, thus bypassing the Agreement's escrow provision.[1] It was deposited in May.

For several months thereafter, the defendant occupied the residence. As November approached, the parties agreed to postpone

---

[1] Because this departure does not affect the resolution of the issues on appeal, we do not dwell on it.

-4-

the closing until February of 2008 to accommodate the Estate's administrative needs.

At the end of 2007, the relationship soured. The defendant continued to occupy the premises but stopped paying rent and other charges due under the Lease. The seller offered to make various compromises, including further extensions of the closing date, in order to facilitate the purchase and sale transaction. These offers were unrequited and, by March 21, 2008, the defendant had notified the seller that he would not be able to close. By mid-April, the defendant had abandoned the Lease and moved out of the house.

Even though the Agreement had cratered, the Estate continued to work with Prudential to find a new buyer for the house in what was by now a depressed market. The house was relisted and, in August of 2008, sold to a third party for $1,200,000.

The Estate assigned its claims against the defendant to the plaintiff, thereby unifying the causes of action resulting from the defendant's breach of the Agreement and the Lease. The plaintiff filed suit in New Hampshire's federal district court. In separate counts, her complaint claimed damages stemming from the defendant's failure to perform his obligations under the Lease (count 1) and damages for breach of the Agreement (count 2). The largest portion of her claimed damages derived from the $400,000 differential between the purchase price specified in the Agreement

and the price actually paid by the eventual buyer (adjusted downward by the retained $25,000 deposit).

At the close of discovery, the plaintiff moved for partial summary judgment. The defendant opposed the motion. With respect to the breach-of-contract count, the defendant conceded that he had not performed. He insisted, however, that the plaintiff's damages should be confined to the deposit. In his view, the terms of the Agreement were ambiguous, and he presented evidence indicating that, all along, he had considered his liability for a breach to be limited to the $25,000 deposit as liquidated damages.

The district court rejected the defendant's importunings. It found the Agreement unambiguous and concluded that the plain language of paragraphs 14 and 17 gave the seller the right, in the event of a breach, both to retain the deposit and to seek recovery of actual damages. Avery, 2010 WL 3211069, at *7-8. The court determined that the seller had not exercised its option to treat the deposit as liquidated damages and thus granted partial summary judgment to the plaintiff on the breach-of-contract count.[2] Id. at *8-9.

---

[2] In the same rescript, the district court granted summary judgment on the breach-of-lease count, see Avery, 2010 WL 3211069, at *3-6, and the defendant does not challenge that ruling on appeal. We therefore limit our discussion to the breach-of-contract count.

After the district court denied the defendant's motion for reconsideration, it held a trial on the issue of damages. With respect to count 2, the jury awarded the plaintiff $263,734.25. This timely appeal followed.

"We review orders granting or denying summary judgment de novo, considering the record and all reasonable inferences therefrom in the light most favorable to the non-moving part[y]." Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010). We will affirm only if the record reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

This case is being litigated in a federal court because of the diverse citizenship of the parties and the existence of a controversy in the requisite amount. See 28 U.S.C. § 1332(a). New Hampshire law prescribes the substantive rules of decision, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), including relevant rules governing contract interpretation. See Eaton v. Penn-Am. Ins. Co., 626 F.3d 113, 114 (1st Cir. 2010).

The defendant attacks the district court's interpretation of the Agreement on two fronts. First, he claims that when he entered into the Agreement he understood paragraphs 14 and 17 to limit his exposure to damages for breach to $25,000. Describing the contractual language as ambiguous, he maintains that the court ought to have left the question of the parties' intent to the factfinder. See Rest. Operators, Inc. v. Jenney, 519 A.2d 256, 258

-7-

(N.H. 1986) (explaining that while contract interpretation is a matter of law, disputes over the meaning of ambiguities should be resolved by the trier of fact).

Second, he claims that there is a genuine issue of fact as to whether the Estate's acceptance of the deposit in May of 2007 constituted an election to take liquidated damages under the Agreement. This factual issue is material, he says, because under New Hampshire law a seller cannot both retain a deposit and seek actual damages. Neither contention is persuasive.

To begin, contractual language is ambiguous only "if the parties to the contract could reasonably disagree as to the meaning of that language." In re Taber-McCarthy, 993 A.2d 240, 244 (N.H. 2010). Unlike beauty, ambiguity does not lie in the eye of the beholder. Rather, an ambiguity exists only when the parties present reasonable but conflicting interpretations of a contractual provision. Lassonde v. Stanton, 956 A.2d 332, 342 (N.H. 2008). If a contractual provision is not susceptible of reasonable but conflicting interpretations, it is not ambiguous. See Greenhalgh v. Presstek, Inc., 886 A.2d 1000, 1003 (N.H. 2005). Absent any ambiguity, an inquiring court must look to the "plain meaning of the language used." Id.

This black-letter law is dispositive here. Paragraphs 14 and 17, whether taken singly or in combination, are free from ambiguity because they can reasonably be read in only one way.

-8-

Paragraph 14 is written with conspicuous clarity. It gives the seller the option to decide whether it wishes to retain the deposit as liquidated damages. That language is clear as a bell. Paragraph 17 does not restrict this unfettered option but, rather, indicates that once the seller accepts the terms of the Agreement, the deposit becomes nonrefundable. This nonrefundability language does not limit the option granted to the seller under Paragraph 14. The reason for making the deposit nonrefundable is to provide consideration for the commitment to extend purchase money financing as well as for the Agreement itself.

Nothing in these paragraphs, or elsewhere in the Agreement, compels the seller to treat the deposit as liquidated damages. The defendant may have believed that to be the case, but an unreasonable belief about the meaning of a contract term is insufficient to ground a viable claim of ambiguity. See Oliva v. Vt. Mut. Ins. Co., 842 A.2d 92, 95 (N.H. 2004); cf. Allen v. Adage, Inc., 967 F.2d 695, 702 & n.7 (1st Cir. 1992) (declining to use a party's self-serving and unsubstantiated belief about a contract term to determine its meaning). The short of it is that the defendant's claim depends on a series of mental gymnastics inconsistent with the plain meaning of the language used. Where, as here, the pertinent contract terms are subject to only one reasonable interpretation, that interpretation necessarily controls.

The defendant cites C & M Realty Trust v. Wiedenkeller, 578 A.2d 354 (N.H. 1990), for the proposition that a nonrefundable deposit already in the hands of the seller may serve as liquidated damages. This proposition is sound, but it does not benefit the defendant.

In C & M Realty, the contract at issue contained language identical to that in paragraph 14. But the facts were materially different. There, the plaintiff sued to recover $100,000 of its deposit, which the defendant had retained as liquidated damages after the plaintiff's breach. Id. at 356. Importantly, the seller in that case had explicitly elected the option of retaining the deposit as liquidated damages. Id. By contrast, the seller in this case made no such election. Hence, C & M Realty is inapposite.

In an effort to shift the trajectory of the debate, the defendant invokes the election of remedies doctrine. This doctrine provides that "liquidated damages and actual damages are, absent express language permitting recovery of both, mutually exclusive remedies, [so] that where an election is permitted, the election of one remedy bars pursuit of the other." Orr v. Goodwin, 953 A.2d 1190, 1196 (N.H. 2008). Here, the defendant asserts that there is a genuine issue of material fact as to whether the seller elected to retain the $25,000 deposit as liquidated damages.

-10-

This is wishful thinking. Genuine issues of material fact cannot be plucked out of thin air but, rather, must spring from the record.

The election of remedies doctrine dictates that when a party elects to retain a deposit as liquidated damages, he cannot in addition seek actual damages. See id. Here, however, there is not a shred of evidence that the seller either elected liquidated damages or sought actual damages on top of liquidated damages. The seller never chose liquidated damages at all.

Struggling to overcome this dearth of factual support, the defendant analogizes this case to Orr and suggests that a party need not make an affirmative election to choose liquidated damages. While it is possible to make an election of remedies by conduct rather than by words, the proposed analogy is deeply flawed.

In Orr, the purchasers of real and personal property committed a breach of the relevant agreement after tendering a $25,000 deposit. Id. at 1193. The agreement contained a provision similar to paragraph 14, which provided the sellers with an "option" to retain the deposit as liquidated damages. Id. The sellers kept the $25,000 and did not communicate with the defaulted purchasers for over a year after learning of the breach. Id. On these facts, the court concluded that the sellers had chosen their remedy and could not double back for a second bite at the cherry. Id. at 1195-97.

The case at hand is cut from different cloth. In _Orr_, the sellers were held to have elected liquidated damages because they kept the deposit and had "virtually no further contact" with the purchasers for a long period of time after learning of the breach. _Id._ at 1193. So viewed, _Orr_ is a case of an election by conduct. _See_, _e.g._, _Ricker_ v. _Mathews_, 53 A.2d 196, 199 (N.H. 1947); 27 Richard A. Lord, Williston on Contracts § 69:56, at 168 (4th ed. 2003).

Here, however, the seller did nothing that might plausibly give rise to a similar inference. An attorney for the seller told the defendant, within a reasonable time after the defendant notified the seller that he would be unable to perform, that the seller would _not_ exercise its liquidated damages option. Given this prompt and explicit disclaimer of the right to retain the deposit as liquidated damages, _Orr_ is quite plainly distinguishable.

The defendant's fallback position is that the seller's acceptance and retention of the deposit in May of 2007 gave rise to an inference that it elected the liquidated damages option. This is sheer persiflage. The defendant's breach did not occur until much later, and there was no requirement that the seller make an election immediately upon receiving the deposit. On this record, inferring an election would be unreasonable.

In a last-ditch effort to snatch victory from the jaws of defeat, the defendant suggests that our reading makes the

liquidated damages provision superfluous.  He is wrong.  Had the seller been able to market the property to a third party at a price higher than that specified in the Agreement, it could have elected to retain the deposit as liquidated damages and, thus, receive a windfall.  See C & M Realty, 578 A.2d at 356.

The script in this case played out differently.  The defendant's breach left the seller facing a depressed market, and the seller eschewed the opportunity to claim the $25,000 deposit as liquidated damages, put the property up for sale, and sought actual damages for the difference between the price specified in the Agreement and the lower price actually obtained.  The Agreement entitled the seller to follow this course of action.

We need go no further.  The only plausible interpretation of the Agreement is that it gives the seller the choice of whether to retain the deposit as liquidated damages or instead to retain the deposit and seek actual damages.  The seller chose to pursue the latter alternative, and the plaintiff as the seller's assignee exercised that right and proffered the evidence needed for a recovery.  The failure of the defendant's claims of error follows inexorably.

**Affirmed**.