# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0211, <u>TAM Development Corporation & a. v. Georges Mills Boat Club</u>, the court on April 17, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve this case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiffs, TAM Development Corporation, Thomas Miller, Andrew Miller, and Mary Miller (collectively, the Millers), appeal a decision of the Superior Court (<u>Ignatius</u>, J.) granting summary judgment in favor of the defendant, Georges Mills Boat Club (Boat Club). This case arose from a dispute over the allowed length of the Millers' boat under the Boat Club's regulations and bylaws. In their complaint, the Millers sought declaratory and injunctive relief, alleged a breach of the duty of good faith and fair dealing, and requested legal fees. We affirm.

We draw the following facts from the trial court's order and the record presented on appeal. Thomas and Mary Miller own a house near Lake Sunapee. In 2011, they joined the Boat Club, a voluntary corporation, comprised of 56 memberships, each owning a 1/56 undivided interest in the Boat Club's property. Pursuant to its bylaws, the "maximum length and beam of the boat or vessel that may utilize the assigned slip will be fixed at the date of assignment." The Boat Club assigned the Millers slip #4 on Dock C. Slip #4 permits docking of a boat no larger than 25 feet in length and 8 feet, 6 inches in width (beam). The Millers originally acquired and docked a 23-foot-long pontoon boat in their slip. After the pontoon boat was flooded by a wake boat, the Millers looked for a new boat to purchase.

The Millers purchased a tri-toon boat, which was delivered in March 2019. Three pontoons comprise the body of the tri-toon boat. The manufacturer's statement of origin described the boat's body as 25 feet in length. The middle pontoon juts out past the outer two pontoons by about four inches. The flat deck extends past the rear of the pontoons by about two feet. The motor extends past the deck by about one foot. Overall, the boat measures 27 feet, two inches long and eight feet, six inches wide. In June 2020, when the Millers docked the boat in slip #4, the member assigned to slip #3 complained to the Boat Club's Board of Directors (Board) that the Millers' boat was too big. After inspecting the boat, the Board sent the Millers a violation

letter due to the size of the boat. The Board met with the Millers and counsel to resolve the dispute. They were unsuccessful.

In December 2020, the Boat Club amended its rules to require written documentation showing the make, model, width, and length before buying a new boat or modifying an existing boat in a manner that may increase its length or width. The amended rule also specified that the Boat Club would measure the length of a boat "from the farthest forward point of its bow to the farthest rearward point of its stern" excluding readily detachable features.

In March 2021, the Board notified the Millers that their boat could not be docked in slip #4. The Millers sued. They sought a declaratory judgment that the Board's actions were inconsistent with its governing documents, and alleged a breach of the contract-based covenant of good faith and fair dealing. The Boat Club moved for summary judgment, which the trial court granted. The trial court denied the Millers' motion for reconsideration. This appeal followed.

## II

Our standard of review for matters decided at summary judgment requires that we review de novo the trial court's application of the law to the facts. Brown v. Concord Group Ins. Co., 163 N.H. 522, 524-25 (2012). We consider all the evidence presented in the record and all inferences properly drawn therefrom in the light most favorable to the non-moving party. Id. at 525. If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. A fact is material if it affects the outcome of the litigation under the applicable substantive law. Id.

A corporation's bylaws are a contract. See Grand Lodge v. Union Lodge, 111 N.H. 241, 244 (1971) (bylaws can constitute contractual obligations); cf. Barclay Square Condominium Owners' Ass'n v. Grenier, 153 N.H. 514, 517 (2006). The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide. Short v. LaPlante, 174 N.H. 384, 387 (2021).

## III

The heart of this appeal is the meaning of the term "length" in the Boat Club's bylaws, prior to the 2020 rule amendment, and its application to the Millers' boat. The Millers argue that the term "length" was ambiguous prior to the 2020 amendment because the Boat Club neither defined it nor established a measurement method. The Boat Club responds that the term is not ambiguous, despite the later amendment to clarify how to calculate the measurement. Alternatively, the Boat Club asserts that, if the term is

ambiguous, the trial court properly interpreted it to mean overall length exclusive of removable items.  The provision of the bylaws at issue states that the "maximum <u>length</u> and beam of the boat or vessel that may utilize the assigned slip will be fixed at the date of assignment." (Emphasis added.)  The Millers' slip was "rated for boat no larger than: 25L x 8-1/2W (Beam)." (Bolding omitted.)

First, we must determine if the term "length" is ambiguous.  Ambiguity exists when the parties reasonably disagree as to the term's meaning. <u>Greenhalgh v. Presstek</u>, 152 N.H. 695, 698 (2005).  The Boat Club contends that the term "length" is unambiguous and means "point to point."  For support it refers to its rules and regulations that require "satisfactory documentation evidencing the . . . length" of the boat.  That provision, however, does not specify the nature of such documentation, inviting the Millers' argument that the boat's hull length, registration, or manufacturer's specifications should govern.  The Millers further respond that the term "length" is ambiguous because the term was undefined without a method of measurement.  We agree with the Millers that the term "length" is ambiguous as it is subject to multiple reasonable interpretations.

When a term is ambiguous, we determine what the parties mutually understood the ambiguous language to mean under an objective standard. <u>Greenhalgh</u>, 152 N.H. at 698.  The trial court reviewed the summary judgment record and analyzed the reasons for the Boat Club's rules, regulations, and bylaws.  It considered the rules, regulations, and bylaws as a whole in light of their intended purposes.  It determined that discounting removable fixtures was consistent with maintaining an overall length restriction to further the purposes of visual appearance, docking multiple boats, and avoiding strain on the dock slips.  The trial court concluded that the meaning of boat "length" is the overall length of the boat measured from the farthest forward point of the boat to its farthest rearward point excluding detachable items.  Reviewing the trial court's interpretation <u>de</u> <u>novo</u> and the evidence on which it was based, we agree with its analysis.

The Millers argue that the trial court erred by "purport[ing] to construe a substantive restriction on boat length in Rules and Regulations which did not include such a substantive restriction and otherwise shifted the burden from the Club to the Millers in order to avoid genuine issues of material fact."  The Millers ignore, however, that the applicable bylaws establish that the maximum length and width of the boat is fixed at assignment and their assignment was "rated for boat no larger than: 25L x 8-1/2W (Beam)." (Bolding omitted.)  The ambiguous term was "length."  Accordingly, the trial court had to determine the term's meaning.  <u>See Greenhalgh</u>, 152 N.H. at 698-99.  The trial court analyzed the term by considering the purposes of setting a length requirement, the Boat Club's bylaws, and its practices.  In doing so, the trial court did not shift any party's burden.  Rather, it used an objective standard to determine what the

3

parties mutually understood the term "length" to mean and was not persuaded by the Millers' arguments.  See id.; Signal Aviation Servs. v. City of Lebanon, 169 N.H. 162, 166-68 (2016).

The Millers also argue that no evidence showed that the Boat Club employed a "length overall" standard for measuring boats before the 2020 amendment.  According to the Millers, the trial court erred by determining that the Boat Club met its burden to establish that the meaning of the ambiguous term "length" meant "length overall."  They argue that the Boat Club used an inconsistent standard of measurement over time.  The Boat Club responds that, while it may have been "lenient" with respect to removable attachments, it consistently applied the length restriction to a boat's overall length consistent with the size of the slips.  The Boat Club points to action taken in 2005 and 2006 to deal with oversized boats that "exceeded their rated size of their assigned slips."  The Boat Club's alleged inconsistency in measuring a boat's length with or without removable attachments does not present a disputed issue of material fact.  We conclude that a "length overall" measurement is the correct interpretation considering that the purpose of the regulations is to ensure that the boats fit into the slips and allow for safe transit of other boats.

In sum, we disagree that the evidence offered by the Millers precludes summary judgment or that the trial court shifted the burden of proof to the Millers.  The Millers mistake their legal arguments concerning alternative methods of measurement for disputed issues of material fact.  The trial court did not ignore disputed issues of fact.  Rather, it analyzed the ambiguous term by examining the contract as a whole, the circumstances surrounding its execution, and the object intended by the agreement, while keeping in mind the goal of giving effect to the intention of the parties.  See Greenhalgh, 152 N.H. at 699.

The Millers next challenge the trial court's determination that the Boat Club did not violate the covenant of good faith and fair dealing.  See Short, 174 N.H. at 391.

> In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another.  In New Hampshire, there is not merely one rule of implied good-faith duty, but a series of doctrines, each of which serves different functions.  The various implied good-faith obligations fall into three general categories: (1) contract formation; (2) termination of at-will employment agreements; and (3) limitation of discretion in contractual performance.

Id. (citations omitted).

4

This case deals with the third category of good faith obligations. The third category is comparatively narrow. Id. However, its broader function is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations, and with common standards of decency, fairness, and reasonableness. Id. at 391-92.

The Millers contend that the trial court erred in granting summary judgment because outstanding disputed issues of material fact existed "concerning the Club's conduct and its actual position on length." They contend that by pointing to an absence of evidence of other oversized boats, the court "shifted the burden of proof and otherwise failed to acknowledge portions of the record that showed a genuine issue of material fact existed." The Millers contend that the Boat Club had to "demonstrate that it had consistently employed the 'length overall' standard in administering the length restriction prior to the December 2020 Amendment and not just in the Millers' case." The Boat Club responds that the record demonstrates that it has consistently evaluated boat lengths, even when assessing oversized boats and boats with detachable features, and that no other boat presented an issue similar to the issue presented here. It contends that the Millers raise no disputed issue of fact material to the issue of good faith and fair dealing. Construing the evidence in the light most favorable to the Millers as the nonmoving party, we agree with the Boat Club. The trial court determined that "[t]he Club did not treat the plaintiffs unfairly or in violation of their justified expectation. The Club refused to allow a boat to berth in a dock slip which violated the maximum length requirement." We agree with the trial court's conclusion and find no facts in dispute that preclude summary judgment on this claim. Accordingly, we affirm the trial court's order in all respects.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

5