Transportation Appeals Board
No. 2000-344

APPEAL OF THE STATE OF NEW HAMPSHIRE

(New Hampshire Transportation Appeals Board)

Argued: November 14, 2001
Opinion Issued: February 8, 2002

*Philip T. McLaughlin,* attorney general (*Bruce J. Marshall,* attorney, on the brief and orally), for the State.

*Verrill & Dana, LLP,* of Portland, Maine (*Jeffrey A. Meyers* on the brief and orally), for the respondent.

BRODERICK, J. The State appeals from a decision of the New Hampshire Transportation Appeals Board (board) awarding the respondent, H.E. Sargent, Inc. (Sargent), compensation for the disposal of certain surplus excavation material associated with the construction of Route 101. We reverse.

The record supports the following facts. Sargent was the successful bidder on a contract to construct a portion of Route 101 and, in April 1996, executed a contract for the work with the New Hampshire Department of Transportation (DOT). As part of the bid process, Sargent was required to provide a unit price for excavation of an estimated 797,000 cubic yards of soil. The invitation for bids contained a standard bid item for Common Excavation (Item 203.1), in addition to bid items for the placement of excavated soils in the road embankment (Item 203.6 Embankment-in-Place) and in four designated off-site locations (Item 203.61 Embankment-in-Place, Surplus Excavation Placement). The invitation for bids did not include any additional bid item for the disposal of other excavated soils. Both the invitation for bids and the earthwork summary included estimated amounts of soil to be excavated under these bid items. Of the 797,000 cubic yards of soil estimated for Common Excavation, 349,430 cubic yards were estimated for placement in the Embankment-in-Place bid item and 208,960 cubic yards were estimated for placement in the Embankment-in-Place, Surplus Excavation Placement bid item. This left a difference of 238,610 cubic yards of soil between that which was to be removed (under Item 203.1) and that which was to be placed (under Items 203.6 and 203.61). The disposition of this soil was not specifically accounted for in the bid documents.

The inclusion of bid items 203.6 and 203.61 in the bid documents was a departure from prior DOT projects. Previously, DOT utilized only one bid item, Common Excavation (Item 203.1), under which, pursuant to standard specifications, all "excavation ... , placement and compaction of all material required for the work, and necessary disposal of all other material" was to be included in a per cubic yard unit price for excavation. In August 1995, DOT issued a special attention provision, which was included in the bid package for this project. According to the special attention provision:

Contractors are advised that this contract utilizes a different method for payment of quantities required for all earthwork excavation and fills. Item 203.1 — Common Excavation, and Item 203.2 — Rock Excavation, will continue to be paid under their respective items. *The above excavation unit prices are now intended to reflect the effort to excavate the material only, and are not to include the placement of this material within the project limits or designated waste sites.* Item 203.6 — Embankment-in-Place, shall be the item that pays for all work associated with placing excavated material or material obtained from off-site sources into all of the fills as shown in the cross sections. The quantity of fill required shall be the quantity paid as Item 203.6 — Embankment-in-Place, or Item 203.61 — Embankment-in-Place (Surplus Excavation Placement). . . . The contractors are cautioned to carefully review the plans, special provisions, earthwork summary, and specifications concerning the pay quantities associated with Item 203.6 – Embankment-in-Place, and Item 203.61 — Embankment-in-Place (Surplus Excavation Placement).

(Emphasis added.)

The contract's prosecution of work provision designated four specific off-site areas for placement of surplus excavation for later use by the State, to be paid for under Item 203.61. It further stated:

These "surplus" material disposal sites are not intended to provide a location for placement of *all* surplus material from this project. In accordance with the special provisions and standard specifications for item 203.6 and 203.61, *the contractor shall be responsible for disposal of any additional surplus excavation which cannot be incorporated within the limits of the embankment as well as for providing any fill which is required to be brought in from off-site.*

(Second emphasis added.)

In addition, the special attention provision provided a means for prospective bidders to make inquiries about bid documents. Sargent made no inquiries about excavation disposal before submitting its bid.

Sargent completed its contract work in September 1997. The final audited quantities of soil actually excavated revealed that Sargent disposed of 123,719 cubic yards of soil at locations other than at Embankment-in-Place and the four off-site storage areas specifically

designated at the time of the bid. Sargent unsuccessfully sought additional compensation of $247,438 for disposal of this material. This calculation represented a unit price of $2.00 per cubic yard, an amount identical to Sargent's bid price for disposal of surplus materials in Item 203.61. Following a hearing, a DOT hearings officer denied the claim on the basis that Sargent's interpretation of the contract, which permitted payment, was unreasonable. Sargent appealed to the board, which found that Sargent was entitled to be paid because the relevant contract language was ambiguous and should be construed against the State, which drafted it. The board refused to entertain the State's motion for reconsideration because "the appeal process set forth in RSA 21-L and RSA 541 provide[s that] any review of the ... Board is to be conducted by the Supreme Court." This appeal followed.

The State argues that the board erred in: (1) finding the contract to be ambiguous; (2) failing to analyze the contract as a whole; (3) failing to consider a patent ambiguity in the contract; (4) interpreting the contract in the manner of a unilateral insurance contract; (5) failing to require Sargent to meet its burden of proof; and (6) refusing to entertain the State's motion for reconsideration.

Because the proper interpretation of a contract is ultimately a question of law for this court, we review the board's interpretation of the contract *de novo. Royal Oak Realty Trust v. Mordita Realty Trust,* 146 N.H. 578 (2001). We will sustain its findings and conclusions unless they are lacking in evidential support or tainted by error of law. *Id.* When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and context in which the agreement was negotiated, when reading the document as a whole. *Id.* Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used. *Id.* Only when the parties to a contract reasonably disagree as to its meaning will the contract's language be deemed ambiguous. *Woodstock Soapstone Co. v. Carleton,* 133 N.H. 809, 815 (1991).

Sargent argues that the plain language of the special attention provision directed the contractor *not* to include *any* costs for soil disposal in Item 203.1. It interprets this provision to require that it include *only* the cost to excavate soils in Item 203.1 and to provide separate unit prices for the disposal of all excavated material under either 203.6 or 203.61, whether used as fill in the road embankment, deposited off-site in the four designated areas, or taken off-site and disposed of in waste areas subsequently approved by the State. Consequently, it argues that it underbid Item 203.1 because it only included the cost of excavating soil in its unit price, and not any costs associated with disposal. We conclude that

Sargent's interpretation is unreasonable in light of the contract's plain language viewed as a whole.

Normally, the cost for soil excavation, placement and disposal was required to be included in the unit price under Item 203.1 (Common Excavation), pursuant to the standard specifications. This traditional bidding practice was modified by the special attention provision included in the Sargent bid package. The plain language of that provision makes clear that no costs for "the placement of . . . material within the project limits or designated waste sites" were to be included in Item 203.1, but instead were to be separately identified in bid Items 203.6 and 203.61. For surplus excavation materials not covered by Items 203.6 and 203.61, the special attention provision is silent. The effect of the special attention provision, then, is to remove from the standard bid item only the costs associated with placement of material on-site in the embankment or off-site in the four designated areas, and not the costs associated with disposal of additional soil. Accordingly, the special attention provision did not modify the usual practice of including disposal costs of this additional soil in the excavation unit price under Item 203.1, pursuant to the standard specification.

█ In finding the contract ambiguous, the board erroneously limited its review to select portions of the contract's special attention provision and did not fully consider all its relevant language or other applicable portions of the contract incorporated by reference in both the special attention and prosecution of work provisions; namely, the special provisions, earthwork summary and standard specifications. A comparison of the special attention provision and the standard specifications indicates that no change was made to the standard specification requirement that Item 203.1 include the "necessary disposal of all other material." The special attention provision specifically stated that "Item 203.1 — Common Excavation . . . will continue to be paid under [its] respective item[]." In addition, the special provision relating to excavation of embankment items required materials within the category Embankment-in-Place, Surplus Excavation Placement (Item 203.61) to be placed in locations designated in the prosecution of work provision. The prosecution of work provision provided the contractor with only four specific surplus disposal sites that were to be paid under Item 203.61.

Finally, the earthwork summary provided estimated quantities of soil to be excavated or placed under Items 203.1, 203.6 and 203.61. If Sargent were correct in its interpretation, then the estimated number of cubic yards of soil estimated under Item 203.1 (Common Excavation) should

have equaled the number of units under Item 203.6 (Embankment-in-Place) plus Item 203.61 (Embankment-in-Place, Surplus Excavation Placement). The estimated amount, however, differed by 238,610 cubic yards of soil between that which was to be removed (under Item 203.1) and that which was to be placed (under Items 203.6 and 203.61). This difference should have alerted Sargent to its misinterpretation.

For these reasons, we find that the contract is not ambiguous when read as a whole and hold that the board's interpretation was unreasonable. Given the dispositive nature of this decision, we need not consider the parties' remaining arguments.

*Reversed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.