Strafford
No. 2003-177

GENERAL LINEN SERVICES, INC.

v.

FRANCONIA INVESTMENT ASSOCIATES, L.P. & a.

Argued: January 14, 2004
Opinion Issued: February 27, 2004

*Hanlon & Zubkus*, of Rochester (*Mark D. Hanlon* on the brief and orally), for the plaintiff.

*Orr & Reno, P.A.*, of Concord (*Charles A. Szypszak* on the brief and orally), for the defendants.

BRODERICK, C.J. The defendants, Franconia Investment Associates, L.P. and C.B. Construction Co., Inc., appeal the order of the Superior Court (*Mohl*, J.) ruling that they breached a linen services contract with the plaintiff, General Linen Services, Inc. (General Linen), and awarding liquidated damages. We reverse in part, vacate in part and remand.

The record supports the following facts. On January 27, 2000, Franconia Investment Associates, L.P. and C.B. Construction Co., Inc. doing business together as Lincoln Condominium Associates (collectively, Lincoln) entered into a "Rental Service Agreement" with General Linen. The agreement specified that General Linen would be the exclusive linen supplier of Lincoln for a facility known as the Lodge for thirty-six months. Pursuant to two handwritten amendments, the agreement provided that Lincoln could cancel the agreement if it installed an "on-premise" laundry facility.

On March 29, 2001, Lincoln notified General Linen that it was canceling the remainder of the agreement because it had installed its own laundry facility. The facility, which Lincoln leased, was a former commercial laundry center and was located in a shopping center approximately one-half mile from the Lodge. Lincoln refurbished the laundry machines and installed racks, folding tables and a telephone system as the facility had not been used for several years.

General Linen brought suit for breach of the agreement. It argued that the plain meaning of "on-premise" did not include Lincoln's laundry facility because it was located in a shopping center one-half mile from the Lodge. Lincoln argued that the facility met the "on-premise" requirement because the purpose of the agreement's cancellation clause was to allow Lincoln to provide its own laundering rather than pay a vendor. Lincoln also argued that the liquidated damages provision contained in the agreement was arbitrary and unreasonable.

The trial court found that "[e]ven in the broadest terms, it cannot be said that taking a portion of an existing laundry some distance from the condominium property qualifies as an 'On-premise Laundry.' The court must give the terms used by the parties their common sense meaning and understanding. Only if [Lincoln] set up a laundry facility *on the premises* of [the Lodge] would [it] then be in a position to invoke the early termination clause of the contract." Therefore, the trial court ruled that Lincoln had breached the agreement. The trial court also ruled that the liquidated damages clause in the parties' agreement was valid and

enforceable, although it disallowed a portion of the alleged liquidated damages because it was based upon unreliable inventory numbers. Accordingly, the trial court entered judgment for General Linen for $46,718.94.

On appeal, Lincoln contends that it had the right to cancel the agreement because it installed an "on-premise" laundry facility, and that the liquidated damages provision is unenforceable because it constitutes an arbitrary and unreasonable penalty.

Because the proper interpretation of a written agreement is ultimately a question of law for this court, we review the trial court's interpretation of the agreement *de novo. See Appeal of State of N.H.*, 147 N.H. 426, 429 (2002). We will sustain its findings and conclusions unless they are lacking in evidential support or tainted by error of law. *Id.*

▮▮▮▮ It is axiomatic that we give an agreement the meaning intended by the parties when they wrote it. *See Appeal of Concerned Corporators of Portsmouth Sav. Bk.*, 129 N.H. 183, 198 (1987). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and context in which the agreement was negotiated, when reading the document as a whole. *See Appeal of State of N.H.*, 147 N.H. at 429. Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used. *Id.* Only when the parties reasonably disagree as to its meaning will the agreement's language be deemed ambiguous. *See id.* If the agreement's language is ambiguous, it must be determined what the parties, under an objective standard, mutually understood the ambiguous language to mean. *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 140-41 (2001).

Lincoln argues that the phrase "on-premise" is ambiguous and can reasonably be interpreted to include any of its premises, not just the Lodge. This interpretation, it argues, includes a laundry facility owned and operated by it, regardless of geographical location. It also argues that the facility it installed in the shopping center was "proximately within the definition of 'premise'" because "[b]oth the space in which [it] installed its laundry and the Lodge were part of the same grounds."

"Premises," as relevant to the parties' agreement, is defined to mean either "a specified piece or tract of land with the structures on it," or "the place of business of an enterprise or institution." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1789 (unabridged ed. 1961). "Premises" can identify single premises or multiple premises. For example, the word can identify the premises of a particular building, as in "this building's premises" or the premises of each building owned by a particular

enterprise or institution, as in "the enterprise's premises." Therefore, the word, as used in a particular situation, must be understood in light of the circumstances, disclosures and context attendant to the situation.

In this case, General Linen delivered and picked up linens solely at the Lodge and Lincoln used these linens exclusively at the Lodge. At trial, Stephen Marcq, General Linen's branch sales and service manager who executed the agreement, testified that he understood "on-premise" to mean "[t]he building that we delivered to and picked up from, the only building we ever knew as [the Lodge]." The trial court agreed and read "on-premise" as meaning only on the Lodge's premises.

At trial, Linda Brent, Lincoln's general manager, testified that the cancellation clause was inserted into the agreement to enable Lincoln to cancel the agreement when it opened its own laundry service. She testified further that during the negotiation of the agreement, Marcq agreed that Lincoln could cancel the agreement if it started its own laundry. When the cancellation clause was inserted into the agreement, however, Marcq used the phrase "on-premise" to memorialize the parties' discussion. When asked at trial why the geographical location of the facility would matter, Marcq testified, "I don't know that it would matter." Under these circumstances, Lincoln could have reasonably understood the phrase to mean that it could invoke the cancellation clause of the agreement if it installed a laundry facility on any of its premises. Therefore, the phrase "on-premise" is not specific enough to conclude, as a matter of law, that Lincoln's interpretation is unreasonable.

■ We hold that the phrase "on-premise" as used in this agreement is reasonably subject to varying interpretations and is, consequently, ambiguous. Therefore, the trial court erred by essentially adopting General Linen's argument that the plain meaning of the phrase supported its position. Accordingly, we vacate the judgment for $46,718.94 and the related award of attorney's fees. We remand to the trial court for it to determine what the parties, under an objective standard, mutually understood the ambiguous phrase "on-premise" to mean. In determining the parties' intent, the trial court should examine the contract as a whole, the circumstances surrounding execution and the object intended by the agreement. *See N.A.P.P. Realty Trust*, 147 N.H. at 141. In light of our holding, we need not address Lincoln's second argument with respect to the interpretation of the phrase "on-premise."

Lincoln also contends that the liquidated damages provision is unenforceable because it constitutes an arbitrary and unreasonable penalty. Although we vacate the judgment, this issue could arise upon

remand and, therefore, we address it here in the interest of judicial economy. *See State v. Frost*, 141 N.H. 493, 498 (1996).

■ To enforce a liquidated damages provision, General Linen must show that: (1) the damages to be anticipated as resulting from the breach are uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was a reasonable one, that is to say, not greatly disproportionate to the presumable loss or injury. *See Shallow Brook Assoc's v. Dube*, 135 N.H. 40, 45-46 (1991).

In this case, we need only address the first of these three factors. The trial court found that the liquidated damages provision was enforceable based upon the reasons set forth by an arbitrator in unrelated litigation involving General Linen and the same liquidated damages provision. In that action, the arbitrator found that the revenues under the agreement would be applied to direct and overhead costs incurred by General Linen and that the remaining revenues would constitute profit. The arbitrator found that "[s]ince the amount of lost profit would have been difficult to calculate" and "[General Linen's] overhead costs would not significantly change with the loss of this one customer," damages resulting from the breach were uncertain in amount or difficult to prove.

In *Technical Aid Corp. v. Allen*, 134 N.H. 1 (1991), we assessed whether a liquidated damages provision was enforceable and held that "where the damage complained of is the loss of a part or the whole of a specific client's business, such damages, absent additional factors, are not sufficiently difficult to prove to support a claim for liquidated damages." *Id.* at 23; *cf. Realco Equities, Inc. v. John Hancock Mut. Life Ins. Co.*, 130 N.H. 345, 351 (1988) ("widely recognized that damages resulting from a failed real estate transaction are difficult to prove"). In this case, General Linen will lose a specific client's business.

■ At trial, Marcq testified that General Linen's damages were difficult to prove because its overhead costs constantly fluctuate. The overhead costs attributable to Lincoln, however, do not appear to be "incapable of accurate estimation," *Langlois v. Maloney*, 95 N.H. 408, 414 (1949). In fact, Marcq testified that General Linen factored in "various overhead contributions" when it calculated the replacement cost to Lincoln of linens listed in the agreement. The arbitrator's finding, that "[General Linen's] overhead costs would not significantly change with the loss of this one customer," also does not lead to the conclusion that damages were uncertain in amount or difficult to prove, but simply indicates that General Linen did not incur large overhead costs on Lincoln's behalf. Moreover, it

is not necessary for General Linen to calculate its damages with mathematical certainty or that the method used result in more than an approximation. *See Phillips v. Verax Corp.*, 138 N.H. 240, 247 (1994). Therefore, we hold that damages were not sufficiently difficult to prove to support a claim for liquidated damages.

Because the liquidated damages provision is held to be unenforceable, General Linen, upon remand, may recover actual damages. *See Technical Aid Corp.*, 134 N.H. at 23.

*Reversed in part; vacated in part; and remanded.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.