Carroll
No. 2003-830

HANK LETARTE

v.

WEST SIDE DEVELOPMENT GROUP, LLC

Argued: June 10, 2004
Opinion Issued: July 23, 2004

*Martin, Lord & Osman, P.A.*, of Laconia (*Marshall D. Hickok* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Ralph Suozzo* and *William J. Edwards* on the brief, and *Mr. Edwards* orally), for the defendant.

DUGGAN, J. The plaintiff, Hank LeTarte, appeals an order of the Superior Court (*O'Neill*, J.) finding the defendant, West Side Development Group, LLC, in partial breach of paragraph one of their agreement and dismissing, without prejudice, his claim for breach of paragraph two of the agreement. We reverse and remand.

The parties agreed to the following facts. The plaintiff provided landscaping services to the defendant, the owner and developer of a subdivision known as "Hale Estates." When the defendant needed additional financing to continue development of the subdivision, the plaintiff introduced the defendant to a lender who agreed to finance the defendant's project. In consideration for the plaintiff's landscaping and financing services, the defendant entered into an agreement with the plaintiff on November 17, 1999. Paragraph one of the agreement provides:

> West Side Development shall pay [LeTarte] the total sum of Thirty Five Thousand Dollars ($35,000.00). Said Thirty Five Thousand Dollars ($35,000.00) shall be paid in increments of not less than One Thousand Dollars ($1,000.00) which shall be paid upon the sale of individual house lots located within the Hale Estates Development. The Thirty Five Thousand Dollars ($35,000.00) shall be evidenced by means of a promissory note. The promissory note shall carry an [sic] five percent (5%) simple interest rate. West Side Development may prepay any or all of the note at any time without penalty.

Paragraph two of the agreement provides:

> West Side Development shall convey to [LeTarte] a house lot located in Phase Three of the within development. [LeTarte] shall have first choice of all lots available within Phase Three. It is understood that the actual conveyance of said lot to [LeTarte] may not be able to be accomplished until such time as the outstanding indebtedness to Philip Rogers Trust is resolved and thereafter the lot will be conveyed. In any event, [LeTarte] shall take title to the house lot at such a time in such a manner that he receives good and marketable title free and clear of any and all encumbrances. The agreed value of the lot is Forty Thousand Dollars ($40,000.00), however the parties are not unmindful of the nature of selling prices/fluctuation of the market and neither party shall seek to be compensated for any such fluctuation in value at the time of the actual conveyance.

On March 4, 2002, the plaintiff notified the defendant of his choice of Lot 47 in the Hale Estates development, pursuant to paragraph two of the agreement. On October 21, 2002, the defendant sold Lot 47 to a third party.

Additionally, the defendant failed to compensate the plaintiff pursuant to paragraph one of the agreement, even though since November 17, 1999, the defendant had sold nineteen house lots. The plaintiff filed suit, seeking damages for the defendant's alleged breach of contract under paragraphs one and two of the agreement. At the time of the lawsuit, the defendant still owed approximately $645,000 to Philip Rogers Trust.

The trial court ordered the defendant to pay the plaintiff $19,000, representing $1,000 for each of the nineteen lots the defendant had sold. The trial court, however, ruled that the plaintiff was not entitled to the entire $35,000 pursuant to paragraph one of the agreement, since there was no acceleration clause in the contract. The trial court also found that

the plaintiff's claim for breach of paragraph two was not ripe since the defendant had not resolved its indebtedness to Philip Rogers Trust and dismissed this claim without prejudice. The plaintiff moved unsuccessfully for reconsideration and clarification. This appeal followed.

The plaintiff first argues that he is entitled to the entire $35,000 pursuant to paragraph one of the agreement. Specifically, the plaintiff contends that the defendant's failure to pay $1,000 for each of the first nineteen lots sold is an anticipatory breach by nonperformance and, thus, a total and immediate breach of paragraph one. We agree.

"Because the proper interpretation of a written agreement is ultimately a question of law for this court, we review the trial court's interpretation of the agreement *de novo*." *Gen. Linen Servs. v. Franconia Inv. Assocs.*, 150 N.H. 595, 597 (2004). "We will sustain its findings and conclusions unless they are lacking in evidential support or tainted by error of law." *Id.*

■■ An anticipatory breach of a contract occurs when a promising party repudiates his obligations either through words or by voluntarily disabling himself from performing them before the time for performance. 9 A. CORBIN, CONTRACTS § 959 (Interim ed. 2002). In instances of anticipatory breach, the non-breaching party has the option to treat the repudiation as an immediate breach and maintain an action at once for the damages. *Id.*

In *Hoyt v. Horst*, 105 N.H. 380 (1964), we explained our view of the anticipatory breach doctrine. In *Hoyt*, the defendants' business associate took a loan from the plaintiff. *Hoyt*, 105 N.H. at 384. After the business associate paid back a few installments, payment ended and the associate left the area. *Id.* The defendants arranged with the plaintiff to reimburse her for their business associate's loan. *Id.* at 384-85. After a few small installments were paid on the loan, the defendants also ceased making payments and the plaintiff sued for the entire amount due on the loan. *Id.* at 385. The issue was whether a breach can be "such that the plaintiff can regard it as 'total' and maintain action for her entire injury, however uncertain in amount and however far into the future it may occur." *Id.* at 389 (quotation, brackets and ellipsis omitted).

■ Our analysis in *Hoyt* was twofold. First, we looked to the theory of successive breaches of a continuing contract, *see* CORBIN, *supra* § 956, to see if the breach was total. *Hoyt*, 105 N.H. at 389. Successive breaches of a continuing contract, while generally viewed as a series of partial breaches, can result in a total breach when there is a repudiation or a material failure of performance. CORBIN, *supra* § 956. In applying this theory, we made two observations. First, after the initial installments, the defendants failed to make any more payments under the contract. *Hoyt*, 105 N.H. at

389. Second, "[t]here was not the slightest indication that any further installments would ever be received by the plaintiff." *Id.* Thus, because of the defendants' material failure to perform, we held that the contract was in total breach. *Id.*

Second, we addressed anticipatory breach of unilateral contracts, *see* CORBIN, *supra* §§ 963, 966, to determine if there was an immediate cause of action. *Hoyt*, 105 N.H. at 389. We recognized that there was authority for the view that where a contract is fully executed by the non-breaching party, no relief for anticipatory breach can be granted until the time for payment arrives. *Id.* That is the view of the RESTATEMENT. *See* RESTATEMENT (SECOND) OF CONTRACTS § 253 comment *c* at 287 (1981). However, we found that an immediate cause of action for the plaintiff's entire injury was proper because "courts should be able to deal with such a situation as here exists so as to avoid endless delays and multiplicity of suits." *Hoyt*, 105 N.H. at 389. Consequently, we declined to follow the RESTATEMENT since it did not meet "the practical realities of such cases as this one." *Id.*

The defendant argues that *Hoyt* is distinguishable, arguing that it was a simple unilateral monthly repayment obligation not conditioned upon any other event. We disagree. Whether future payment is triggered by a due date or by subsequent events makes no difference. *Hoyt* is applicable because an anticipatory breach is born from the absolute failure to make payments under the contract, regardless of the payment trigger.

▮ Applying the rule of *Hoyt* to this case, the defendant's repeated and unjustified failure to make any of the first nineteen payments for more than three years constitutes a total and complete disregard of the agreement. As in *Hoyt*, gross nonperformance of payments may result in total anticipatory breach of the contract. *See id.* In fact, the defendants made several payments in *Hoyt*, while the defendant in this case has failed to make even one. Even more so than in *Hoyt*, the defendant's past pattern of nonperformance makes any future payments unlikely. Accordingly, the defendant is in total anticipatory breach of paragraph one of the agreement and the plaintiff is entitled to the entire $35,000.

The plaintiff next argues that the trial court erred in ruling that his claim for breach of paragraph two was not ripe since time for performance had not arrived. The trial court found that the agreement "expressly and unambiguously" provided that the house lot would not be conveyed until "the outstanding indebtedness to Philip Rogers Trust is resolved." Since the defendant was still indebted to Philip Rogers Trust, the trial court ruled that the claim was not ripe for review. We disagree.

"Because the proper interpretation of a written agreement is ultimately a question of law for this court, we review the trial court's interpretation of the agreement *de novo*." *Gen. Linen Servs.*, 150 N.H. at 597. "We will sustain its findings and conclusions unless they are lacking in evidential support or tainted by error of law." *Id.* "When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and context in which the agreement was negotiated, when reading the document as a whole." *Id.*

Paragraph two of the agreement expressly states that the defendant "shall convey to [the plaintiff] a house lot located in Phase Three of the within development." Paragraph two further adds that "the actual conveyance of said lot to [the plaintiff] *may not* be able to be accomplished until such time as the outstanding indebtedness to Philip Rogers Trust is resolved." (Emphasis added.) It then continues, "In any event, [the plaintiff] shall take title to the house lot at such a time in such a manner that he receives good and marketable title free and clear of any and all encumbrances."

Reading the agreement as a whole, we hold that the resolution of the debt is not the specified time for performance. The agreement merely states that the conveyance "may not be able to be accomplished," not that it *shall not* be conveyed until the indebtedness is resolved. Moreover, the language exists in the agreement to acknowledge that the entire development was subject to a senior first mortgage that would have to be discharged before the plaintiff could receive clear title from the defendant. The plaintiff and the defendant were not required to wait until the entire indebtedness was resolved. The agreement contemplates that the defendant could secure a partial release on the house lot for the plaintiff as provided for in the mortgage documents.

The plaintiff argues that the defendant's sale of the plaintiff's chosen lot to a third party constitutes an immediate breach since the defendant can no longer convey the chosen lot. During oral argument, the defendant argued that it did not breach the contract because performance is still possible as it might be able to reacquire the house lot from the third party and convey it to the plaintiff in the future. We disagree. The sale of the house lot to a third party was a clear manifestation of the defendant's intention not to perform its part of the bargain. *See* CORBIN, *supra* § 984.

When one party voluntarily puts it out of his power to perform, it is a breach that gives rise to an immediate cause of action. *Roehm v. Horst*, 178 U.S. 1, 18 (1900). "It has always been the law that where a party deliberately incapacitates himself or renders performance of his contract impossible, his act amounts to an injury to the other party, which gives the

other party a cause of action for breach of contract . . . ." *Id.* By selling the house lot to a third party and making performance impossible, the defendant is in immediate breach of paragraph two.

The defendant additionally argues that the agreement is not valid since it violates the rule against perpetuities. We decline to address this remaining argument because it is wholly lacking in merit. *See State v. Higgins,* 149 N.H. 290, 302 (2003).

We remand to the trial court to award the appropriate damages.

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.