Strafford
No. 2010-559

TOWN OF BARRINGTON

v.

RICHARD TOWNSEND

Argued: March 8, 2012
Opinion Issued: October 16, 2012

*Mitchell Municipal Group, P.A.*, of Laconia (*Judith E. Whitelaw* on the brief and orally), for the petitioner.

*Douglas, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* on the brief and orally), for the respondent.

HICKS, J. The respondent, Richard Townsend, appeals orders of the Superior Court (*Wageling*, J.): (1) granting summary judgment in favor of the petitioner, Town of Barrington (Town), on its claims that the respondent used his property as a campground and his barn as a dwelling without proper Town approvals; and (2) awarding attorney's fees to the Town. We affirm.

The following facts appear in the record and are recited for background purposes. Undisputed facts necessary to support summary judgment will be noted as such.

The respondent owns property at 43 Hall Road in Barrington. He is a recreational vehicle (RV) enthusiast and has lived, though the record suggests perhaps seasonally, in various RVs on the property. According to the respondent's pleadings and deposition, he originally established sites on the property to park his construction equipment. These sites had utility hook-ups that were later upgraded "to double for guests." The sites have metered electrical hook-ups, and some have water and/or sewer connections. The respondent stated in 2009 that his property had "10 full year round hook ups."

The respondent is a member of Family Motor Coach Association (FMCA), whose members, he asserts, "post stops around the country to visit." The respondent himself, for instance, posted an offer on the association's website in 2009, inviting friends and FMCA members to "visit at no charge," except for metered utilities. He testified at his deposition that he would sometimes have approximately fifty guests a year at his property, although, in 2009, he had only four couples in four motor homes stay at the site.

In September 2008, the motor home in which the respondent had been living sustained damage from an electrical fire rendering it uninhabitable. The respondent states that following the fire he moved into his barn, which he described as "adequate for emergency living quarters." The barn is a two-story structure with a workshop on the lower level and the respondent's office on the upper level. The barn has insulation, sheetrock, carpet, electricity, plumbing, two heating systems, and central air conditioning. The second floor also has restaurant kitchen equipment, a sink, a bed, a futon, a game table, and massage and fitness equipment.

In March 2009, the Town sent the respondent a notice of zoning violation/cease and desist order. The order noted the following violations, among others: (1) "[Y]ou have changed the use of your barn/shop to a dwelling unit which constitutes a violation of Article 15.4.1 [of the Town's zoning ordinance] Building Permit Required and Article 15.4.2 Certificate of Occupancy Required"; and (2) "[Y]ou have constructed a camp on said lot without benefit of a building permit and rent said camp" in "violation[] of Article 15.4.1 Building Permit Required and Article 15.4.2 Certificate of Occupancy Required as well as Article 3.1.1 Permitted Structures and Article 4.2.1 Standards for the GR and NR District (2) and (3)." The respondent replied that although he had not yet completed the repairs to his fire-damaged RV, he would "move the unfinished home from the barn to appease the town." He asserts that he had moved out of the barn by April 1, 2009.

The Town asserts that it sent a second letter to the respondent in May 2009, "reiterating the violations and notifying [him] that court action would

be taken if he failed to come into compliance." It commenced that action in July by petition for preliminary and permanent injunctions, civil penalties, and attorney's fees. The respondent brought a number of counterclaims alleging, among other things, bad faith by the Town's code enforcement officer and police chief.

In February 2010, the Town filed a motion for summary judgment on two of the alleged code violations and on the respondent's counterclaims. The alleged violations at issue "were that the [respondent] used, and continues to use, his Property as a campground without proper approvals and that the [respondent] has used, and continues to use, his barn as a residential property without proper approvals." The trial court granted the Town's motion. The Town then moved for voluntary nonsuit of its remaining claims without prejudice and for civil penalties and attorney's fees. The trial court granted the motions for nonsuit and attorney's fees and denied the motion for civil penalties.

On appeal, the respondent argues that the trial court erred in granting summary judgment on the code violation issues because "[m]aterial issues of fact existed regarding [his] use of his property and barn." He also argues that the trial court erred in awarding attorney's fees to the Town. We will address these issues in turn.

> In reviewing the trial court's grant of summary judgment, we consider the affidavits, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If there is no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, the grant of summary judgment is proper. We review the trial court's application of the law to the facts *de novo*.

*Bates v. Vt. Mut. Ins. Co.*, 157 N.H. 391, 394 (2008) (citations omitted).

The respondent asserts that "the Town failed to prove that [he] was operating a non-residential campground *business* that required planning board approval." The Town interprets the respondent's argument to assert that "there was a disputed fact as to whether his campground use was commercial or noncommercial, and further[,] . . . that that disputed fact was material to the trial court's decision as to whether the use was non-residential." The Town then asserts that the trial court did not base its decision upon a finding that the use was commercial and, in fact, did not make such a finding. It further argues that whether the use was commercial or private is "not material, or even relevant."

We agree with the Town that the trial court did not consider the distinction between commercial and non-commercial use material to the determination of whether the use was non-residential. Rather, the court

accepted the respondent's own descriptions of his property as a "legal *private* camping park" and a "*Private* Seasonal Recreational Camping Park." (Emphases added.) The court also found "there [was] no doubt" that the respondent had not submitted plans for site plan review of that use. It accordingly granted the Town summary judgment on its claim that the respondent used "his property as a campground without the proper approvals."

The Town apparently recognizes that the real issue is the propriety of "the trial court's legal determination that a recreational campground was a non-residential use under Section 3.1.6 of the zoning ordinance." It contends, however, that the respondent waived that issue by failing to clearly raise it in his notice of appeal or brief. We disagree.

■ Supreme Court Rule 16(3)(b) provides, in part:

> While the statement of a question [in the brief] need not be worded exactly as it was in the appeal document, the question presented shall be the same as the question previously set forth in the appeal document. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein.

The respondent's notice of appeal raised the question: "Did the trial court err in deciding [in favor of] the Town on the issue of whether the [respondent] was operating an *illegal* campground in the GR district of Barrington?" (Emphasis added). This broad question fairly encompasses the issue of whether the trial court erred in making the legal determination that the respondent's campground use violated the zoning ordinance. *Cf. Hillside Assocs. of Hollis v. Maine Bonding & Cas. Co.*, 135 N.H. 325, 330 (1992) (concluding that question in notice of appeal asking whether court erred in ruling insurer obligated to provide coverage, "[a]lthough . . . far from the model of specificity we would prefer to encounter," included subsidiary question of whether court erred in failing to find mutual mistake warranting rescission of insurance contract).

We also conclude that although the respondent's brief frames his argument in terms of a dispute over a genuine issue of material fact, the argument encompasses a challenge to the court's legal conclusion that his use of the property was non-residential. Specifically, he asserts:

> The trial court erred in granting summary judgment to the Town of Barrington on the issue of whether [the respondent's] RV-related improvements changed the character of his use to a "non-residential" use that required planning board approval. . . . The improvements he made were akin to adding guest accommo-

dations to a more traditional home, or updating electrical and plumbing to accommodate frequent visitors. Such changes do not convert a purely residential property into a "non-residential use."

This is a legal argument and we will treat it as such despite its mischaracterization by the respondent. Accordingly, we conclude that the issue has not been waived.

Article 3.1.6 of the Barrington Zoning Ordinance provides: "All multi-family dwelling units and non-residential development shall comply with the Site Plan Review Regulations of the Town of Barrington." The sole issue before us is whether the trial court correctly ruled, as a matter of law on the undisputed facts, that the respondent's use of his property was non-residential.

The Town represents that its zoning ordinance does not define the term "non-residential" and, since the respondent does not dispute that representation and neither party has provided us with the ordinance in its entirety, we take that representation as true. "The interpretation of a zoning ordinance is a question of law, which we review *de novo*. Because the traditional rules of statutory construction govern our review, we construe the words and phrases of an ordinance according to the common and approved usage of the language." *Fox v. Town of Greenland*, 151 N.H. 600, 605 (2004) (citation omitted).

The dictionary definition of non-residential is "not residential," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1538 (unabridged ed. 2002), and the term "residential," in turn, is defined by reference to the word "residence," *id.* at 1931 (defining "residential," in part, as "used, serving or designed as a residence"). The definitions of "residence" most relevant to interpreting the ordinance are: "the place where one actually lives or has his home as distinguished from his technical domicile" and "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." *Id.*

There is no dispute that the respondent used his property to accommodate up to fifty RV guests per year, in groups the respondent testified probably did not exceed six at a time. We conclude that the respondent's campsites were thus "a place of temporary sojourn or transient visit" for such guests, as opposed to a residence. *Id.*

In addition, the Town points out that under its zoning ordinance, "recreational vehicles cannot be used [as] a 'residence,' as the term

'residence' is commonly defined and used." Specifically, the ordinance defines recreational vehicle, in part, as:

> Any building, structure, or vehicle designed and/or used for living or sleeping and/or recreational purposes and equipped with wheels to facilitate movement from place to place, and automobiles when used for living or sleeping purposes and including pickup truck coaches (campers), motor homes, boats, travel trailers, and camping trailers not meeting the specifications for manufactured housing. A recreational vehicle is not designed or permitted for use as a permanent dwelling. For the purposes of this Ordinance a recreational vehicle shall not be considered to be a dwelling unit.

This provision further supports the conclusion that the use of a property to accommodate visiting RV guests is a nonresidential use under the ordinance. *See Town of Greenland v. Bunker*, 118 N.H. 783, 786 (1978) ("In construing language not defined in the body of the ordinance we also look to the ordinance as a whole and attempt to discern the meaning intended by the framers." (quotation omitted)). We conclude, therefore, that the trial court correctly interpreted the term "non-residential" to apply to the respondent's self-described camping park.

The respondent next contends that the trial court erred in enjoining him from using his barn as a dwelling unit without a certificate of occupancy. He argues that because he had moved out of the barn after being served with the cease and desist notice, an injunction was unnecessary and "only accomplished the result of punishing the defendant for past conduct which he had voluntarily remedied." He asserts, citing *Thurston Enterprises, Inc. v. Baldi*, 128 N.H. 760, 764 (1986), that an injunction issued for such a purpose should be vacated. *See Thurston Enterprises*, 128 N.H. at 764 (noting that "[i]njunctive actions . . . look to prevent future conduct rather than to remedy past conduct" and vacating orders to repair damage to right of way).

The Town counters that "[a]n injunction against future violations of a zoning ordinance is appropriate where 'there exists some cognizable danger of recurrent violations.'" (Quoting *N.H. Dep't of Envtl. Servs. v. Mottolo*, 155 N.H. 57, 64 (2007)). It also asserts that the evidence supports a finding of such danger.

The zoning ordinance defines "dwelling unit" as follows:

> One (1) or more rooms providing complete living facilities for one (1) family, including kitchen facilities or equipment for cooking or provisions for the same, and including room or rooms for living,

sleeping, bathing and eating. A recreational vehicle, as defined in this Article, shall not be construed as a dwelling unit.

The trial court noted that the respondent admitted to having a stove, sink, bed, plumbing, electricity, heat, air conditioning, and other amenities in the barn. It also took note of photographs in the record "depicting what appears to be a fully furnished, carpeted, decorated dwelling unit." Thus, the undisputed evidence established that the barn is equipped as a dwelling unit.

The crux of the respondent's claim of error appears to be the inference in the court's ruling that he continued to use the barn as a dwelling after the cease and desist order. The court stated, "It is apparent that [the respondent] is using the barn as a dwelling unit . . . ." (Emphasis added.) The respondent asserts that having submitted evidence that he stopped using the barn immediately after receiving the cease and desist letter, he raised a genuine issue of material fact concerning his use of the barn. He therefore argues that "[t]he trial court's ruling in favor of the Town on the issue of [his] alleged 'continued use' of the barn should . . . be reversed."

The Town counters that even assuming *arguendo* that the trial court erred in finding that the respondent continued to use the barn as a dwelling, "such error is harmless" because: (1) the respondent's admitted use of the barn as a dwelling during the winter of 2008-2009 supports a finding of a past violation; and (2) the respondent's admission that he continued to use the second floor of the barn as his office supports a finding of continuing use without a certificate of occupancy. The latter argument is based upon the ordinance's requirement of a certificate of occupancy for any use of a building, not just use as a dwelling. Specifically, Article 15.4.2 of the ordinance provides that "[n]o person shall use or permit the use of any building, structure or premises or part thereof, hereafter erected, relocated, altered, repaired, converted or extended until a certificate of occupancy is issued by the Building Inspector." The Town therefore argues that because the respondent continued to use the barn as his office, "removing the finding that the dwelling use is a continuing use would not change the trial court's ultimate determination that the appellant was continuing to use the barn without a [certificate of occupancy]." In other words, the disputed fact was not material to the trial court's ruling.

■ We agree with both arguments. The respondent testified in his deposition that he lived in the barn from just prior to Christmas 2008 until March 2009. He also testified in January 2010 that the barn was "currently used as [his] office." Accordingly, there was no genuine issue of material

fact as to the respondent's use of the barn and the trial court did not err by granting injunctive relief "with regard to [the respondent's] use of the barn without a certificate of occupancy."

The respondent next challenges the award of attorney's fees. "[W]e review the trial court's award of attorney's fees under our unsustainable exercise of discretion standard[,] . . . keep[ing] in mind the substantial deference accorded a trial court's decision on attorney's fees." *Demers Agency v. Widney*, 155 N.H. 658, 664-65 (2007). "To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party. If there is some support in the record for the trial court's determination, we will uphold it." *Arcidi v. Town of Rye*, 150 N.H. 694, 704 (2004) (quotation omitted).

The respondent first argues that because summary judgment should not have been granted, an award of fees was not warranted. Because we affirm the award of summary judgment, we reject this argument.

■ The respondent next contends that even if fees were awardable, the court erroneously failed to conduct "any analysis as to whether *the amount* of fees claimed by the Town's attorneys is reasonably related to the claims [the Town] 'prevailed' on, or whether the hourly rate charged by the Town's law firm is reasonable." We note initially that while the respondent seems to assume that we have adopted the federal "lodestar" approach to awarding attorney's fees in all cases, the case he cites in support, *Scheele v. Village District*, 122 N.H. 1015 (1982), involved a federal claim under 42 U.S.C. § 1983, for which fees were sought under 42 U.S.C. § 1988. The instant case, by contrast, is a state action to enforce a zoning ordinance, for which fees are awardable under RSA 676:17, II. We apply our own law of fee shifting in such cases. *Cf. Funtown USA, Inc. v. Town of Conway*, 129 N.H. 352, 356 (1987) (noting the federal fee shifting case, relied upon by both parties, was "not controlling authority because there [was] no § 1983 claim being made here").

■ RSA 676:17, II provides, in part:

In any legal action brought by a municipality to enforce, by way of injunctive relief as provided by RSA 676:15 or otherwise, any local ordinance, code or regulation adopted under this title . . . the municipality shall recover its costs and *reasonable* attorney's fees actually expended in pursuing the legal action if it is found to be a prevailing party in the action.

RSA 676:17, II (2008) (emphasis added.) In *Funtown*, "taking our cue from the Code of Professional Responsibility," we set forth "eight guiding factors for use in determining whether an attorney's fee is reasonable." *Funtown*, 129 N.H. at 356. They are:

> the amount involved, the nature, novelty, and difficulty of the litigation, the attorney's standing and the skill employed, the time devoted, the customary fees in the area, the extent to which the attorney prevailed, and the benefit thereby bestowed on his clients.

*Id.* (quotations omitted). Here the respondent's challenges implicate the factors dealing with the attorney's skill, the customary fees in the area, and the extent of success in the action.

Jeffrey Belanger, the Town's counsel, submitted an affidavit of attorney's fees with appended copies of invoices. He acknowledged that "[t]hose invoices are not recorded in a manner that distinguishes among the four claims of zoning violations for which the Town sought relief" but was nevertheless "confident that well over 50 percent of the time that [he] spent on this case was devoted to the two claims on which the Town won on summary judgment." He therefore suggested that the court award only half of the fees the Town actually incurred in the matter. The court awarded fees in that amount.

The respondent argues that the invoices and attorney's affidavit do not support the fifty percent fee award because "counsel could offer nothing more than a *wild guess* as to the number of hours actually spent on the two [successful] claims," and "[a]n award of fees against a litigant should be based on more [than] an attorney's mere 'confidence' that his guess about the amount of fees related to a particular issue is correct."

The record does not support the contention that Attorney Belanger's estimate of the time spent on the successful claims was simply a wild guess. He averred:

> From the beginning of the litigation, those two successful claims were the claims for which the Town was most interested in achieving compliance. Based on the priority placed on those claims, I spent more time on those two claims during this litigation than on the two claims for which the Town moved to non-suit.

The trial court could have assessed the accuracy of Attorney Belanger's estimate in light of its familiarity with the case. As the Town argues:

> Judge Wageling presided at the trial on the motion for summary judgment and awarded the attorney's fees. She was well aware of

the scope of work required to conduct discovery on the two issues presented, prepare the motion for summary judgment, and prepare for the bench trial. The trial court was familiar with the scope of the pleadings that addressed the use of the property as a campground and the use of the barn, as well as the number and nature of pleadings that were filed by the respective parties during the ten month period between the filing of the initial petition and the trial court's order on the motion for summary judgment.

■ We conclude that it was within the trial court's discretion to accept Attorney Belanger's conservative estimate of the time he spent on the issues upon which the Town prevailed as opposed to the claims it nonsuited. Even without Attorney Belanger's estimate, it was within the trial court's discretion, given its involvement in the ongoing proceedings, to find that the time claimed to have been spent on the successful issues was reasonable. We find no error on this issue.

■ The respondent also contends that "Attorney Belanger's affidavit fail[ed] to provide sufficient information to determine whether the hourly rate he charged was reasonable in light of his experience level and the rates customarily charged by attorneys for similar work in his geographic area." The trial court, however, was not required to specifically find that Attorney Belanger's hourly rate was reasonable, but, rather, was required to determine whether the overall fee charged was reasonable. While "customary fees in the area" is a factor to consider in determining reasonableness of the overall fee, *Funtown*, 129 N.H. at 356 (quotation omitted), and evidence of the same might have been helpful to the trial court, the absence of such evidence does not render the trial court's conclusion incorrect.

The trial court awarded $15,450.48 in attorney's fees, fifty percent of the fees actually incurred by the Town. "Keep[ing] in mind the substantial deference accorded a trial court's decision on attorney's fees," *Demers Agency*, 155 N.H. at 665, we cannot conclude that the court unsustainably exercised its discretion.

Finally, any issue raised in the notice of appeal but not briefed is deemed waived. *See In re Estate of King*, 149 N.H. 226, 230 (2003).

*Affirmed.*

DALIANIS, C.J., and CONBOY, J., concurred.