Carroll
No. 2012-490

TOWN OF BARTLETT BOARD OF SELECTMEN

v.

TOWN OF BARTLETT ZONING BOARD OF ADJUSTMENT

Argued: February 13, 2013
Opinion Issued: April 12, 2013

*Donahue, Tucker & Ciandella, PLLC*, of Exeter (*John J. Ratigan* on the brief and orally), for the petitioner, Town of Bartlett Board of Selectmen.

Town of Bartlett Zoning Board of Adjustment filed no brief.

*Cooper Cargill Chant, P.A.*, of North Conway (*Christopher T. Meier* on the brief and orally), for the intervenor, River Run Company, Inc.

DALIANIS, C.J. The petitioner, the Town of Bartlett Board of Selectmen (Selectboard), appeals an order of the Superior Court (*Houran*, J.) upholding a decision of the Town of Bartlett Zoning Board of Adjustment (ZBA) finding that a sign erected by the intervenor, River Run Company, Inc. (River Run), is permitted under the Town of Bartlett's Zoning Ordinance (ordinance). We affirm.

The following facts are drawn from the trial court's order and the record. River Run maintains vacation ownership units at Attitash Mountain Village, a resort in Bartlett. In September 2009, River Run applied to the Selectboard for a permit to place a sign on Route 302, advertising, "The Suites at Attitash Mountain Village." In January 2010, the Selectboard approved River Run's application, and the sign was erected at the westerly entrance to the resort area. At some point, an additional, smaller sign was

affixed underneath the approved sign, reading "REGISTRATION .3 MILES BACK ON LEFT." The registration office to which the sign refers is the office at which patrons register for Attitash Mountain Village. The office is located on a lot within Attitash Mountain Village, separate from the lot on which the sign is located.

In June 2010, the Selectboard informed River Run that the additional sign violated the ordinance. In response, River Run submitted an amended sign permit application, seeking approval of the additional sign. The Selectboard denied River Run's request pursuant to Article XVI, Section A-10 of the ordinance, which prohibits the erection of an outdoor sign "on any premises other than on the premises where the activity to which the sign pertains is located," and Section D, which prohibits off-premise signs "in all districts except as provided elsewhere in [the] Ordinance." The Selectboard reasoned that because the "sign advertises the registration office which is not on the property where the sign is, it is considered an off premise sign and therefore not permitted." River Run appealed to the ZBA, arguing that the sign was "a directory sign" under Article XVI, Section H.4 of the ordinance, which exempts from the ordinance "[d]irectional, informational, warning, and/or safety oriented signs not directed to or readily visible from the public way and/or required by State law or regulation or for the control, movement, and/or protection of patrons."

The ZBA held a public hearing at which it noted that the ordinance does not define the word "premises." The ZBA then discussed whether the word might "mean the total holdings of the landowner," rather than individual lots. Ultimately, the ZBA found "that the sign served as a directional sign for patrons" under Article XVI, Section H.4, and was exempt from the provisions of the ordinance prohibiting off-premise signs.

The Selectboard moved for rehearing, arguing that the ZBA's decision that the sign was a directional sign was unlawful or unreasonable. It also noted that the "ZBA meeting minutes contain a fair amount of discussion about the word 'premises,' " and contended "that the term 'premises' cannot be interpreted to mean more than a single lot of land, and cannot mean multiple lots under the same ownership." According to the Selectboard, "[a]ny interpretation that 'premises' means more than a single lot is in error." River Run objected, asserting that the ZBA's decision was lawful because the sign was either exempt as a directional sign under Article XVI, Section H.4, or was not an off-premise sign and, thus, was permitted under the ordinance.

After the ZBA denied the Selectboard's request for rehearing, the Selectboard appealed to the superior court. The Selectboard again argued that River Run's sign was not exempt as a directional sign, and "that the term 'premises' cannot be interpreted to mean more than a single lot of

land, and cannot mean multiple lots under the same ownership." The trial court ruled that the sign was not an off-premise sign. In doing so, the trial court rejected the Selectboard's argument that the court should refuse to address this issue because it was not properly before the court on appeal. This appeal followed.

The Selectboard argues that the trial court exceeded its jurisdiction by upholding the ZBA's decision upon a ground not set forth in the motion for rehearing. *See* RSA 677:2 (Supp. 2012), :3, I (2008). It further contends that the trial court erred by: (1) construing the term "premises" in the ordinance to mean a unified vacation resort complex located on multiple tax lots; and (2) failing to find that the sign is an "off-premise" sign not subject to exemption.

Judicial review in zoning cases is limited. *Brandt Dev. Co. of N.H. v. City of Somersworth*, 162 N.H. 553, 555 (2011). Factual findings by the ZBA are deemed *prima facie* lawful and reasonable, and the ZBA's decision will not be set aside by the superior court absent errors of law unless it is persuaded by the balance of probabilities, on the evidence before it, that the ZBA decision is unlawful or unreasonable. *Id.*; RSA 677:6 (2008). We will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. *Brandt Dev. Co. of N.H.*, 162 N.H. at 555.

We begin by addressing the Selectboard's challenge to the superior court's subject matter jurisdiction. The Selectboard argues that the trial court's subject matter jurisdiction in a zoning matter is circumscribed by the issues raised in a motion for rehearing under RSA 677:2. Thus, it contends that the trial court lacked jurisdiction to consider whether the sign was not an off-premise sign because River Run did not file a motion for rehearing with respect to this issue.

■ Under RSA 677:3, I, "no ground not set forth in the [motion for rehearing] shall be urged, relied on, or given any consideration by a court unless the court for good cause shown shall allow the appellant to specify additional grounds." This "statutory scheme is based upon the principle that the local board should have the first opportunity to pass upon any *alleged errors* in its decisions so that the court may have the benefit of the board's judgment in hearing the appeal." *Atwater v. Town of Plainfield*, 160 N.H. 503, 511-12 (2010) (quotation omitted; emphasis added). Nevertheless, we are aware of no authority, and the Selectboard cites none, that River Run, *which prevailed before the ZBA*, had a statutory obligation to file a motion for rehearing in order to establish the trial court's jurisdiction over its alternative argument *in support of* the ZBA's decision. *Cf. Mack v. Board of Appeals, Town of Homer*, 807 N.Y.S.2d 460, 463 (Sup. Ct. 2006)

(finding that petitioners were not required to appeal town code enforcement officer's interpretation to board of appeals "because they were not aggrieved by it").

■ Moreover, although the Selectboard asserts that its "request for rehearing was based exclusively on the ZBA's interpretation of Zoning Ordinance Article XVI, Section H.4," and that neither it nor River Run appealed the ZBA's conclusion that the sign was an off-premise sign, the Selectboard *itself* raised the issue in its motion for rehearing when it contended "that the term 'premises' cannot be interpreted to mean more than a single lot of land, and cannot mean multiple lots under the same ownership." River Run then also raised the issue in its objection to the Selectboard's motion for rehearing. Thus, insofar as the Selectboard maintains that the issue was raised for the first time before the superior court, it is mistaken. Accordingly, we conclude that, when reviewing the ZBA's decision that River Run's sign was exempt from the terms in the ordinance prohibiting off-premise signs, the trial court had subject matter jurisdiction to consider initially whether River Run's sign was, in fact, an off-premise sign.

■ We next address the Selectboard's argument that the trial court misconstrued the word "premises." "The interpretation of a zoning ordinance is a question of law, which we review *de novo.*" *Town of Barrington v. Townsend,* 164 N.H. 241, 246 (2012) (quotation omitted). "When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent. *Fox v. Town of Greenland,* 151 N.H. 600, 605 (2004). We determine the meaning of a zoning ordinance "from its construction as a whole, not by construing isolated words and phrases." *Feins v. Town of Wilmot,* 154 N.H. 715, 719 (2007) (quotation omitted). Because the ordinance in this case does not define "premises," we will look "to the common and approved usage of" the word. *Townsend,* 164 N.H. at 246 (quotation omitted).

■ BLACK'S LAW DICTIONARY defines "premises," in relevant part, as "[a] house or building, along with its grounds." BLACK'S LAW DICTIONARY 1300 (9th ed. 2009). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines "grounds," in relevant part, as "an area appropriated to or used for a particular purpose." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1002 (unabridged ed. 2002). It further defines "premises," in pertinent part, as "a specified piece or tract of land with the structures on it" or "the place of business of an enterprise or institution." *Id.* at 1789.

■ ■ We have relied upon similar definitions of "premises" in other contexts. *See State v. Thiel,* 160 N.H. 462, 466 (2010) (looking to plain and

ordinary meaning of word "premises" as "the place of business of an enterprise or institution" in addressing defendant's argument that her conduct did not meet requirements of shoplifting statute (quotation omitted)); *Gen. Linen Servs. v. Franconia Inn Assocs.*, 150 N.H. 595, 597 (2004) (defining "premises" as relevant to the parties' agreement as "a specified piece or tract of land with the structures on it," or "the place of business of an enterprise or institution" (quotations omitted)). Indeed, in *General Linen Services*, we said that " '[p]remises' can identify single premises or multiple premises," and "the word, as used in a particular situation, must be understood in light of the circumstances, disclosures and context attendant to the situation." *Gen. Linen Servs.*, 150 N.H. at 597-98. While we need not define the precise parameters of "premises" as used in the ordinance, we conclude that the word "premises" in this case includes the buildings and grounds associated with the place of business of Attitash Mountain Village — namely, vacation ownership units, including its registration office — regardless of whether the buildings and grounds are located on separate lots.

■ The Selectboard argues that a plain meaning analysis "leads to the conclusion that the term 'premises' refers more accurately to a single lot of land." In support of this interpretation, it contends that "premises," as referred to in the ordinance, "has been defined in practice to mean either a single lot under the same ownership, or separate businesses on a single lot." The "words used in a zoning ordinance will be given their ordinary meaning unless it appears from their context that a different meaning was intended." *Feins*, 154 N.H. at 719 (quotation omitted). Here, while the ordinance does not define "premises," it defines "lot" as "a tract, parcel, or plot of land." Had it been the intent of the drafters of the ordinance to interpret the word "premises" as a single lot of land, they could have done so by using the word "lot." *See Scotland Yard Ltd. Liab. P'ship v. Uxbridge Zoning Board of Appeals*, No. 377478 (AHS), 2010 WL 2690532, at *3 (Mass. Land Ct. July 8, 2010) (finding that had the drafters of the zoning bylaws intended the word "premises" to mean a single parcel, "they could have used the term 'lot' ").

Additionally, we fail to see how the First Circuit Court of Appeals' explanation of the distinction between "onsite" and "offsite" signs in *Ackerley Communications v. City of Cambridge*, 88 F.3d 33, 34 n.1 (1st Cir. 1996), supports the Selectboard's argument. In *Ackerley*, the First Circuit explained that "[a]n onsite sign carries a message that bears some relationship to the activities conducted on the premises where the sign is located. . . . An offsite sign . . . . carries a message unrelated to its particular location." *Id.*; *see also Vono v. Lewis*, 594 F. Supp. 2d 189, 194 n.9 (D. R.I.

2009) (utilizing same explanation for "on-premise" signs and "off-premise" signs). Nothing in that explanation suggests that the meaning of the word "premises" is limited to a single lot.

The Selectboard further argues that our interpretation "is incompatible with the other uses of the word 'premises' in the ordinance." It cites four provisions of the ordinance, arguing that our interpretation would "frustrate the clear intent" of one and render another "completely impractical and unworkable." Upon review of the ordinance, we are not persuaded that our interpretation will have either effect.

Nor are we persuaded that our interpretation frustrates the clear intent of the ordinance. The ordinance limits the placement of outdoor signs to "the premises where the activity to which the sign pertains is located." At oral argument, the Selectboard explained that the concern addressed by this provision is the proliferation of business signs in Bartlett. The effectiveness of the provision in addressing this concern, however, is not undermined by our holding. Interpreting the word "premises" to mean the buildings and grounds associated with the place of business of Attitash Mountain Village merely allows for the placement of outdoor signs *on the premises of Attitash Mountain Village.* While River Run may own several businesses at different properties, we do not read the word "premises" so broadly as to refer to multiple businesses located throughout Bartlett, which happen to be operated by a single owner. Here, although the sign and the registration office are on different lots, both are geographically located at the place of business of Attitash Mountain Village and, therefore, are on the same "premises."

In light of our interpretation of the word "premises," we need not address the parties' arguments concerning whether the sign is a directional signal exempt from the ordinance.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.