NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0338

JERRY GAUCHER

v.

GARY WATERHOUSE & a.

Argued: June 14, 2022
Opinion Issued: July 20, 2022

Seufert Law Office, PA, of Franklin (Christopher J. Seufert on the brief, and Christopher C. Snook orally), for the plaintiff.

Law Offices of Steven G. Shadallah, of Salem (Steven G. Shadallah on the memorandum of law and orally), for the defendants.

DONOVAN, J. The plaintiff, Jerry Gaucher, appeals an order of the Superior Court (Schulman, J.) denying his claim for payment of a $20,000 lease termination fee and awarding one of the defendants, Waterhouse Realty Trust (the Trust), costs associated with a separate eviction proceeding against the plaintiff. The plaintiff argues that the court erred by: (1) finding that he, and not the defendants, materially breached a lease termination agreement (LTA); (2) awarding the Trust costs incurred in the separate eviction proceeding; and (3) awarding no damages in connection with the court's prior final default judgment against another defendant, Kevin Waterhouse.

We conclude that the trial court properly found that the plaintiff, and not the defendants, materially breached the LTA and, therefore, he has no right to the termination fee. However, because the defendants assigned all of their rights set forth in the LTA to a third party, we also conclude that the trial court erred in finding that the Trust was entitled to the costs associated with the plaintiff's eviction. Finally, we affirm the trial court's reconsideration of its prior default judgment order against Kevin Waterhouse. Accordingly, we affirm in part, reverse in part, and remand.

The trial court found or the record supports the following facts. Gary Waterhouse and his brother, Kevin Waterhouse, were the trustees of Waterhouse Realty Trust. The Trust is a former owner of a parcel of commercial real estate on which it operated Waterhouse Country Store, Inc., a convenience store. In January 2014, the Trust leased a portion of the store to the plaintiff for a period of five years to operate a restaurant.

In May 2015, the Trust began negotiating the sale of the property to Klemm's Corner, LLC (Klemm), which did not want to assume the landlord/tenant relationship with the plaintiff after the transfer of the property. The plaintiff agreed to accommodate the Trust by relinquishing his rights under the lease in exchange for a $20,000 lease termination fee. The plaintiff anticipated that the termination fee would allow him to relocate and resume his restaurant operation without incurring a financial loss. Accordingly, the plaintiff and the Trust executed the LTA, by which the plaintiff agreed to vacate the premises by June 15, 2015 and to "indemnify[] and hold[] harmless the Landlord from any and all actions, claims, costs, demands, expenses, fines, liabilities and suits of any nature whatsoever." In exchange, the Trust agreed to pay the plaintiff $20,000 on July 1, 2015.

According to the plaintiff, he ceased operating his restaurant, removed most of his equipment, and vacated the premises at some point prior to June 15. On June 29, the trustees transferred ownership of the property from the Trust to themselves in their individual capacities. On July 1, the Trust failed to pay the plaintiff the $20,000 termination fee. Gary Waterhouse informed the plaintiff that, because he had not yet closed the sale of the property to Klemm, he lacked the funds to pay the fee. In response, at some point in July, the plaintiff reoccupied the premises and resumed operating his restaurant without the property owners' authorization. Thereafter, on July 27, the Waterhouse brothers closed the sale of the property to Klemm. The next day, the Waterhouse brothers, in their individual capacities and as successors in interest to the Trust, assigned all of their rights, title in and to the LTA to Klemm. On the same day, Gary Waterhouse's counsel offered the plaintiff the $20,000 lease termination fee if he agreed to vacate the premises and abandon any claim to lawful possession of the leased premises. The plaintiff refused to leave, claiming that the Trust's failure to pay the $20,000 on July 1 "rescinded" the LTA and resurrected his tenancy.

When the plaintiff refused to vacate the property, Klemm filed a petition to evict the plaintiff. Pursuant to an agreement with Klemm, Gary Waterhouse agreed to pursue and assume the costs of the eviction action on Klemm's behalf. For the next five months, during the pendency of the eviction petition, the plaintiff remained in possession of the premises and continued to operate his restaurant without paying rent to either Klemm or the Trust. In December 2015, the Circuit Court (Stephen, J.) issued an order finding that, although the Trust's failure to pay the termination fee on July 1 may support a claim for damages, it did not resurrect the tenancy. Accordingly, the court granted the eviction because the plaintiff failed to demonstrate "that the original lease is still in existence." The plaintiff thereafter vacated the premises without appealing the eviction order.

In November 2017, the plaintiff initiated a civil action in the superior court against the Trust, Gary and Kevin Waterhouse in their capacities as trustees, and Waterhouse Country Store, Inc. seeking, among other things, the return of his $1,500 security deposit and the payment of the $20,000 lease termination fee. The Trust filed a counterclaim for, among other things, indemnification pursuant to the LTA for the expenses that it claimed to have incurred litigating the eviction proceeding against the plaintiff. The plaintiff later amended his complaint to include Gary and Kevin Waterhouse as defendants in their personal capacities, alleging that their transfer of the property from the Trust to themselves prior to the closing violated the Uniform Fraudulent Transfer Act. See RSA ch. 545-A (2021). Kevin Waterhouse did not respond to the plaintiff's complaint and the Superior Court (McNamara, J.) entered a default judgment against him. The court granted the plaintiff's motion to consolidate the claims against the defendants, and the parties proceeded to a bench trial.

In May 2021, the Superior Court (Schulman, J.) entered judgment in favor of the remaining defendants. The court first found that the plaintiff terminated his tenancy when he vacated the premises prior to June 15. Further, the court determined that the Trust did not commit a material breach of the contract by failing to pay the lease termination fee on July 1. The court reasoned that the contract did not provide that time was of the essence and that the precise date of payment was not essential to the contract. Moreover, the court reasoned that "[e]ven if" the Trust did commit a material breach by failing to pay, the plaintiff "had no right to re-enter the premises and re-take possession." The court explained that a "material breach excuses the non-breaching party from future performance" and "does not entitle the non-breaching party to unilaterally claw back past performance." (Emphases omitted.)

As a result, the court found that the plaintiff materially breached the LTA by reoccupying the premises in July. The court reasoned that because the lease termination fee was intended to effect the plaintiff's permanent separation

from the premises, the plaintiff's subsequent "trespassory retaking of possession, and refusal to leave . . . [was] the very definition of a material breach." Accordingly, the court found that, because the plaintiff "materially breached the [LTA], the Trust [was] discharged from its obligation to" pay the lease termination fee to the plaintiff.

Finally, the court found that the indemnification provision in the LTA required the plaintiff to indemnify the Trust for the costs of the separate eviction proceeding with interest. The court reasoned that the indemnification provision anticipated "precisely this type of expense" and that the "expense was due solely to [the plaintiff's] material breach of the agreement." The court offset the costs incurred by the Trust in the eviction proceeding with the plaintiff's $1,500 security deposit from the original five-year lease. The plaintiff moved for reconsideration, arguing, in part, that the court erred by ruling that the plaintiff is not entitled to damages based upon the prior default judgment against Kevin Waterhouse. The court denied the motion, explaining that Kevin Waterhouse's "liability was never previously determined" and that the court's final order provides that the "amount is $0.00." This appeal followed.

On appeal, the plaintiff first argues that the court erred in finding that he materially breached the LTA by reoccupying the premises and thus was not entitled to the $20,000 lease termination fee. In his view, the Trust materially breached the LTA by not paying the termination fee on July 1, which excused his obligation to vacate the premises. When reviewing a trial court's decision rendered after a trial on the merits, we will uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. Loon Valley Homeowner's Ass'n v. Pollock, 171 N.H. 75, 78 (2018). We do not decide whether we would have ruled differently than the trial court, but, rather, whether a reasonable person could have reached the same decision based upon the same evidence. Id. We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given to the evidence. Id. It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented. Id. We review the trial court's application of the law to the facts de novo. Id.

A material breach of contract by one party to a contract discharges the duty of performance of the other. See Fitz v. Coutinho, 136 N.H. 721, 724-25 (1993). A breach is material if: (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions; (2) the breach substantially defeats the contract's purpose; or (3) the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract. Found. for Seacoast Health v. Hosp. Corp. of America, 165 N.H. 168, 182 (2013). Whether a delay in payment is a material breach is a question for the trier of fact to determine from the facts and circumstances of the case. Fitz, 136 N.H. at 725.

4

We find no error in the trial court's finding that the Trust's failure to pay the lease termination fee on July 1 did not constitute a material breach of the contract. "Time is generally not of the essence in a contract, unless the contract specifically so states, even if a particular time schedule is specified." Id. (holding that one party's delay in payment did not constitute a material breach of the contract and thus did not excuse the other party's nonperformance). Here, the plaintiff does not dispute that the LTA did not indicate that time was of the essence with respect to the payment of the lease termination fee. Further, the evidence suggests that the purpose of the LTA was to terminate the plaintiff's tenancy and that the plaintiff understood that a delay in payment was possible based upon the timing of the closing of the real estate transfer to Klemm. The LTA reflects this understanding by providing for a two-week gap between termination of the tenancy and payment of the termination fee.

In any event, a material breach excuses future performance, not past performance. See Bartush-Schnitzius v. Cimco Refrig., 518 S.W.3d 432, 437 (Tex. 2017). The court found that, prior to June 15, the plaintiff vacated the premises and terminated his tenancy. Therefore, even if the Trust materially breached the LTA, any such breach did not permit the plaintiff to rescind his prior performance, unilaterally reoccupy the premises, and enforce the Trust's obligation to pay the $20,000 termination fee.

The plaintiff nonetheless argues that the Trust committed an anticipatory breach of the contract by transferring the property from the Trust to Gary and Kevin Waterhouse personally. He argues that this action "was a voluntary decision," which rendered the Trust insolvent and made "[the Trust's] performance under the [LTA] impossible." We disagree.

An anticipatory breach occurs "[w]hen one party voluntarily puts it out of his power to perform," which consequently "gives rise to an immediate cause of action." LeTarte v. West Side Dev. Group, 151 N.H. 291, 296 (2004). However, at trial, the plaintiff failed to offer any factual support for his claim that the transfer of the ownership of the property rendered the Trust insolvent and incapable of paying the lease termination fee. Instead, the record demonstrates that the failure to pay the termination fee on July 1 was solely attributable to a delay on the closing of the property. Indeed, one day after the sale to Klemm closed, "the Trust informed [the plaintiff] that it had the $20,000.00 lease termination fee and would pay it to [the plaintiff] if he left the building." Accordingly, the trial court did not err by concluding that the property transfer from the Trust to the Waterhouses was immaterial to the delay in payment and did not constitute a voluntary decision resulting in an anticipatory breach of the LTA.[1]

---

[1] With respect to the plaintiff's claim against Gary Waterhouse in his individual capacity for a violation of the Uniform Fraudulent Transfer Act (UFTA), RSA chapter 545-A, at trial the parties

The plaintiff next argues that the trial court erred by finding that the plaintiff materially breached the LTA. He maintains that the purpose of the LTA was to effect the sale of the property to Klemm, which the Trust accomplished despite the plaintiff's unilateral resurrection of his tenancy. Therefore, the plaintiff argues, his reoccupation of the premises did not constitute a material breach of the LTA that discharged the Trust's obligation to pay the lease termination fee. We disagree.

The record demonstrates that the purpose of the LTA and the termination fee was to secure the plaintiff's permanent separation from the premises. Describing the purpose of the LTA, the plaintiff testified that the Trust "approached [him] because the new owners didn't want a food vendor there" and "they negotiated a buyout so that [he] would leave." Indeed, the record demonstrates that the parties negotiated a price for the lease termination that would appropriately compensate the plaintiff for vacating the property. The LTA reflects this purpose, as it includes no reference to a subsequent property sale and, instead, only describes the terms and conditions of the termination of the plaintiff's tenancy. Accordingly, we conclude that the plaintiff materially breached the LTA and that the trial court did not err by denying the plaintiff's claim to the lease termination fee on that basis.

The plaintiff also challenges the court's decision awarding the Trust fees and costs incurred as a result of the eviction proceeding. The plaintiff maintains that the LTA's terms bound only himself and the Trust and that Gary and Kevin Waterhouse, acting individually and on behalf of the Trust, subsequently assigned "all rights, title, and interest in the lease and [the LTA] . . . to Klemm." Therefore, the plaintiff argues, the Trust "has no claim for indemnity" against the plaintiff pursuant to the LTA for the costs of the eviction and that the trial court erred in ruling that he is liable to the Trust for those costs. We agree.

The parties do not dispute that the Waterhouse brothers and the Trust assigned their rights under the LTA to Klemm. Furthermore, the record demonstrates that the assignment occurred before Klemm initiated the eviction action against the plaintiff and that Gary Waterhouse, and not the Trust, agreed to cover the costs of the eviction on behalf of Klemm. Indeed, at the bench trial, Gary Waterhouse testified that he alone was obligated to evict the plaintiff. No evidence was presented to the trial court suggesting that, when the Trust and its trustees assigned their rights to the lease and the LTA to Klemm, the Trust or its trustees reserved any of their indemnity rights or interests set forth in the LTA. Nor was there any evidence suggesting that Klemm subsequently reassigned those rights to the Trust or its trustees.

agreed that, if the Trust was not liable on the breach of contract claim, there was no need to consider the UFTA claim.

6

Accordingly, the trial court erred by finding that the Trust is entitled to recover the costs and expenses that it allegedly incurred in prosecuting the eviction action.

Finally, the plaintiff argues that the trial court erred by amending the amount of damages in the court's prior final order entering a default judgment against Kevin Waterhouse. We are unpersuaded. The plaintiff moved for entry of final judgment against Kevin Waterhouse as a result of his default and, in a separate filing, submitted an affidavit for damages identifying the $20,000 lease termination fee and the $1,500 security deposit as the damages due to him as a result of the Trust's alleged breach of the LTA. Although the court's February 2020 order granted the plaintiff's motion for entry of final judgment, the order did not indicate that the court accepted and awarded the damages alleged in the affidavit.

Generally, when an action seeks damages alleging joint liability against multiple parties, trial courts should not enter a final default judgment as to one, but not all, of the jointly liable defendants. See 10A Charles Alan Wright et al., Federal Practice and Procedure 3d § 2690, at 72-77 (1998). As the Supreme Court has observed, if claims alleging joint liability have been decided against the plaintiff on the merits, the action will be dismissed as to all defendants, including the defaulted party. See Frow v. De La Vega, 82 U.S. 552, 554 (1872) ("The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree pro confesso against him, and proceed with the cause upon the answers of the other defendants."). If the plaintiff prevails, he will be entitled to a final decree against all; but "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal." Id.

Absent a statute or evidence in the record to the contrary, we presume that the plaintiff's claims against the Trust and Gary and Kevin Waterhouse for the $20,000 lease termination fee and the return of the $1,500 security deposit are rooted in joint liability. See 17A Am. Jur. 2d Contracts § 421, at 405 (2004) ("[A]n obligation undertaken by two is presumably joint in the absence of express words to render it several or joint and several, or of terms of a promise considered in the light of the surrounding circumstances indicating an intention to be bound severally, or jointly and severally, or of a statute declaring every contract, though joint in its terms, to be several as well as joint."). Therefore, the default judgment against Kevin Waterhouse was not final until the claims against Gary Waterhouse and the Trust were fully adjudicated. See Frow, 82 U.S. at 554.

This conclusion is consistent with the trial court's May 2021 order which acknowledged the prior default judgment against Kevin Waterhouse and explained that the bench trial served as the damages hearing. The February

7

2020 order entering default judgment against Kevin Waterhouse was necessarily not final because it did not resolve the claims against all of the defendants. See Germain v. Germain, 137 N.H. 82, 84 (1993) (explaining that, in general, when a trial court issues an order that does not conclude the proceeding before it, by, for example, entering judgment with respect to some, but not all parties to the action, we consider any appeal from such an order to be interlocutory). As such, the default judgment order was subject to the trial court's continuing authority to reconsider and correct the order prior to the entry of final judgment. See Goudreault v. Kleeman, 158 N.H. 236, 249 (2009) ("The power to reconsider an issue once decided remains in the court until final judgment or decree." (quotation and brackets omitted)). In its order on the plaintiff's motion for reconsideration, the court again clarified that the "amount of Kevin Waterhouse's liability was never previously determined" and it determined that that "amount is $0.00." We conclude, therefore, that prior to the court's May 2021 order, no final judgment had been entered with respect to the damages against Kevin Waterhouse for his prior default judgment. Because the "trial court has the power to reconsider an issue until final judgment or decree," Radziewicz v. Town of Hudson, 159 N.H. 313, 315 (2009), we find no error in its reconsideration of the February 2020 order.

Nonetheless, the trial court also found that the plaintiff was entitled to a "set-off" for his $1,500 security deposit and rejected the Trust's argument that the LTA sub silentio extinguished his right to the return of his deposit. That finding has not been challenged on appeal. Accordingly, we remand this matter to the trial court to address the defendants' liability for the return of the security deposit consistent with this opinion. Any issues that the plaintiff raised in the notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

> Affirmed in part; reversed in part; and remanded.

MACDONALD, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

8